**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

In re:

SEVEN STARS ON THE HUDSON CORP          CASE NO.: 19-17544-RBR
                                                                  CHAPTER 11

                 Debtor             /

**EXPEDITED MOTION TO USE CASH COLLATERAL**

**EXPEDITED HEARING REQUESTED:** Debtor requires the use of the cash collateral in order to continue operating.

- **Debtor is seeking authority to use the cash collateral of secured Creditor Wells Fargo Bank.**
- **The cash collateral is proceeds earned from Debtor's business.**
- **Debtor is requesting to use all cash collateral for its operation until a final hearing on this motion.**
- **Debtor has attached a budget, pursuant to the Court's Guidelines for Motion Seeking Authority to Use Cash Collateral and Motion Seeking Approval of Postpetition Financing (Exhibit "A").**
- **Debtor has attached an interim order, pursuant to the Court's Guidelines for Motion Seeking Authority to Use Cash Collateral and Motion Seeking Approval of Postpetition Financing (Exhibit "B")**

Seven Stars on the Hudson Corp, (the "Debtor"), files this *Expedited Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and for Final Hearing* (the "Motion"), and states as follows:

**BACKGROUND**

1. On June 6, 2019, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its assets as a debtor in possession. No trustee, examiner, or statutory committee has been appointed.

2. The Debtor is a Florida corporation that manages a trampoline amusement park. The Debtor's assets are subject to a blanket lien in favor of Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo is currently owed $1,270,107.66. The Debtor reserves the right to challenge the validity, priority and extent of the Wells Fargo lien as this case progresses.

3. The Debtor's proposed income and expenses for a three month period are set for in the monthly budget (the "Budget") attached hereto as Exhibit "A".

4. The Debtor requires the use of cash collateral to fund necessary operating expenses of its business. As set forth below, the Debtor requests that the Court approve its use of cash collateral pursuant to the terms of the Budget, and further authorize the Debtor to (a) exceed any line item on the Budget by an amount equal to ten (10%) percent of each sum line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget to not exceed ten (10%) percent in the aggregate of the total Budget.

## **ARGUMENT**

5. The Debtor's use of property of its estate is governed by Code section 363, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to eh property of the estate, including the right to use property of the estate in compliance with § 363. *See* 11 U.S.C. § 1107(a).

6. When a chapter 11 debtor in possession is authorized to operate its business, it may use property of the estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363(c). The Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest…" 11 U.S.C. § 363(a).

7. It is appropriate for the Court to authorize the Debtor to use cash collateral because Wells Fargo is being adequately protected and such use will preserve the going concern value of the estate.

    **A.**    **Wells Fargo is Adequately Protected**

8. The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral. *See* 11 U.S.C. § 361; *see In re Potvin Lumbar Company, Inc.,* 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

9. Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor),* 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin,* 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978).

For example, *O'Connor* states that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." 808 F.2d at 1396. (citations omitted).

10. Adequate protection is meant to ensure that a secured creditor receives the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.,* 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted). The essence of adequate protection is to ensure the maintenance and continued responsibility of lien values during the interim between filing and confirmation in a case. *In re Arriens,* 25 B.R. 79, 87 (Bankr. D. Or. 1982).

11. The adequate protection provided from the Debtor to Wells Fargo consist of: (a) payments of $12,500.00 per month, and (b) replacement liens against the property of the Debtor of any use of Wells Fargo cash collateral, with such liens having the same seniority and entitled to the same level of priority as the priority of Wells Fargo's liens against the Debtor's property that existed prior to the petition date.

12. The Debtor's requested use of cash collateral and the protections afforded to Wells Fargo herein are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of Wells Fargo's alleged collateral.

  **B.**  **Cash Collateral Use Will Preserve the Debtor's Going Concern Value**

13. The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a chapter 11 plan. However, if the Debtor is not allowed to use cash collateral, it will be unable to operate.

14. It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.,* 727 F.2d 1017, 1019 (11th Cir. 1984); *see In re Stein,* 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (debtor permitted to use cash collateral when creditor was undersecured because such use was necessary to its continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business.

15.   If the Debtor cannot use cash collateral, it will be forced to cease operation. By contrast, permitting cash collateral use will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of all creditors.

**WHEREFORE,** the Debtor requests that this Court enter an order substantially in the form of the proposed order attached as **EXHIBIT "B"** (1) granting the Motion; (2) authorizing the Debtor's use of cash collateral in accordance with the Budget and the terms set forth herein; (3) granting the replacement liens set forth above in connection with the Debtor's use of cash collateral; (4) scheduling a final hearing; and (5) granting the Debtor such other and further relief as is just and proper.

[Remainder of Page Intentionally Left Blank]

Dated: June 6, 2019

By: /s/ Sonya Salkin Slott, Esq.
Sonya Salkin Slott, Esq.
FLBN 603910

The Salkin Law Firm
PO Box 15580
Plantation, FL 33318
954-423-4469
sonya@msbankrupt.com
*Attorneys for Debtor*

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case on June 6, 2019.

By: /s/ Sonya Salkin Slott, Esq.
Sonya Salkin Slott, Esq.

# EXHIBIT A

**Seven Stars on the Hudson Corp**

| | 19-Jun | 19-Jul | 19-Aug |
|---|---:|---:|---:|
| **Revenue** | $117,700.00 | $133,750.00 | $112,350.00 |
| Cost of Goods Sold | $ (13,817.00) | $ (16,090.00) | $ (12,298.00) |
| **Gross Profit** | $ 103,883.00 | $ 117,660.00 | $ 100,052.00 |
| | | | |
| Disbursements | | | |
| Advertising and Marketing | $ 2,500.00 | $ 2,500.00 | $ 2,500.00 |
| Rebranding Costs | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 |
| Bank Service/ Merchant Charges | $ 3,300.00 | $ 3,300.00 | $ 3,300.00 |
| Dues and Subscriptions Center Edge | $ 950.00 | $ 950.00 | $ 950.00 |
| Payroll Exp- Leased Employees | $ 22,565.00 | $ 26,202.00 | $ 20,169.00 |
| Printing and Postage | $ 200.00 | $ 200.00 | $ 200.00 |
| Bookkeeping | $ 630.00 | $ 630.00 | $ 630.00 |
| Rent Expense | $ 30,879.00 | $ 30,879.00 | $ 30,879.00 |
| Sales Tax for Rent | $ 1,791.00 | $ 1,791.00 | $ 1,791.00 |
| Supplies | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| Park Maintenance | $ 250.00 | $ 250.00 | $ 250.00 |
| Telephone Expense | $ 270.00 | $ 270.00 | $ 270.00 |
| Utilities | $ 2,374.00 | $ 2,816.00 | $ 3,059.00 |
| Workers Comp | $ 547.00 | $ 306.00 | $ 319.00 |
| Sales Tax | $7,700.00 | $8,750.00 | $7,350.00 |
| **Total Disbursements** | $ (78,656.00) | $ (83,544.00) | $ (76,367.00) |
| | | | |
| **Net Ordinary Income** | $ 25,227.00 | $ 34,116.00 | $ 23,685.00 |
| | | | |
| Wells Fargo SBA | $ (12,500.00) | $ (12,500.00) | $ (12,500.00) |
| Salary-Jens | $ (3,750.00) | $ (3,750.00) | $ (3,750.00) |
| Salary-Eddy | $ (3,750.00) | $ (3,750.00) | $ (3,750.00) |
| | | | |
| **Net Income** | $ 5,227.00 | $ 14,116.00 | $ 3,685.00 |

# EXHIBIT B

Exhibit B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

SEVEN STARS ON THE HUDSON CORP    CASE NO.: 19-17544-RBR
                        CHAPTER 11

_____Debtor_____/

**INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL**
***NUNC PRO TUNC* TO JUNE 5, 2019 AND SETTING FINAL HEARING DATE**

**THIS MATTER** came before the Court on Date and Time upon *Debtor's Expedited Motion to Use Cash Collateral Nunc Pro Tunc to June 5, 2019* (DE ) (the "Motion"). The Court, having reviewed the Motion, determined that the relief sought in the Motion is in the best interests of the Debtor, its estate, and all parties in interest, heard argument of counsel, finds that good cause exists to grant the Motion.

  **IT IS THEREFORE ORDERED:**

1. The Motion is granted and approved on an interim basis pending a final order.

2. Debtor is authorized to use the cash collateral referenced in the Motion.

3. A copy of this Interim Order shall be served on the Notice Parties within three (3) business days from entry.

4. There shall be a carve-out in the budget for the inclusion of fees due the Clerk of Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930.

5. This Interim Order is without prejudice to the rights of the parties to seek any further or different relief, or modification of this Interim Order, including, but not limited to, relief from the automatic stay.

6. Except as expressly provided herein, the rights, claims, and interests of the Debtor, any prepetition lender, and all other parties in interest are hereby reserved.

7. Notwithstanding the provisions of § 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by § 552(b) of the Bankruptcy Code, the Debtor grants in favor of Wells Fargo, as security for all indebtedness that is owed by the Debtor to Wells Fargo, under the secured documentation, but only to the extent that Wells Fargo's cash collateral is used by the Debtor, a post-petition security interest and lien in, to and against any and all assets of the Debtor, to the same extent and priority that Wells Fargo held a properly perfected pre-petition security interest in such assets; <u>provided that</u>, however, under no circumstances shall Wells Fargo have a lien on any causes of action arising under 11 U.S.C. §542 *et seq.*, 547, 548, 549, 550, 551, or any of the Debtor's assets that it did not have a right to pre-petition.

8. A final hearing shall be held on ***Date at Time at the Date at Time at the United States Courthouse, 299 E. Broward Blvd., Courtroom 308, Fort Lauderdale, Florida 33301***,

and any objections to Debtor's use of cash collateral must be served on Debtor's counsel two (2) business days prior to the final hearing.

###

Submitted by: Sonya Salkin Slott, Esq.
FLBN 603910
The Salkin Law Firm
PO Box 15580
Plantation, FL 33318
954-423-4469
sonya@msbankrupt.com

Mrs. Slott will serve a signed copy of the order on all interested parties and file a certificate of service with the Court.