**EXHIBIT 12**



THINKEEN LEGAL, P.A.
1951 NW 7TH AVE #600,
MIAMI, FL 33136
WWW.THINKEENLEGAL.COM

Christian Pérez Font
T +1 954 873 0923
CPerezFont@thinkeenlegal.com

June 4th, 2019

Kristina E. Wilson, Esq.
Simply Legal
1395 Brickell Avenue, Suite 900
Miami, FL  33131

Re:     **NOTICE TO CEASE AND DESIST**

*Continued violations of the Lease Agreement between MDG Powerline Holdings, LLC and Seven Stars on the Hudson Corp dated November 23, 2015 (the "Lease").*

Dear Ms. Wilson:

This firm along with the Law Office of Kathleen A. Daly, P.A., represents Seven Stars on the Hudson Corp, d/b/a Rockin' Jump Fort Lauderdale ("RJ").  We are writing to you in your capacity as the legal representative of both MDG Powerline Holdings, LLC ("Landlord") and XBK Management, LLC, d/b/a Xtreme Action Park ("Xtreme").  This letter is being served as notice of your clients' continuing and wrongful interference with RJ's business operations (as more fully described below) which has significantly impaired its quiet enjoyment of the leased premises.   We hereby demand that your clients cease and desist from all such wrongful activities immediately.

1.- *Signage*

Section 15 of the Basic Provisions of the Lease, as amended, reads as follows:

> "*SIGNAGE: Tenant will be permitted to install the maximum amount of signage allowable by local code on both the east and west façade of the building **as well as signage in the interior of the Premises near the front of the building,***



> *subject to Landlord approval, which shall not be unreasonably withheld. Tenant shall also have rights to the pro-rata portion of or dedicated panel on any existing or future pylon or monument, signage for the Project.*"
> (emphasis added).

In prior correspondence it has been pointed out that, Landlord, in clear violation of the terms of the Lease, has either directed or allowed the removal of our client's existing and previously approved internal signage (specially the one near the sole access point in the park which was removed in April 2018 and which had been in place since 2016), thus negatively impacting our client's ability to conduct business and its right to quietly enjoy the leased premises for their intended purpose. This violation continues unabated as of this date and our client has been unable to put adequate signage within the premises despite many notices and attempts to come to a reasonable understanding with Landlord and/or Xtreme.

Landlord working in conjunction with Xtreme continues to refuse to and/or fairly represent/display our client's facilities (including its name) in the facility maps that are held available for guests visiting the park, and also refuse to provide adequate screen time to our client in the TV monitors located within the facilities, again, in clear violation of the terms of the Lease.

Our client has also indicated that Landlord in conjunction with Xtreme has removed all references to our client from the marquee located in Powerline Road all of which, aside from also being a clear violation of the terms of the Lease, has contributed to the deterioration of our client's business as many passing clients can no longer see that our client's facilities are located within the premises. In this respect, please note while our client is not featured in said marquee, Landlord and its agent Xtreme have allowed other business entities which are not within the leased premises to be represented/advertised therein which not only shows bias against our client but also a willful disregard for the terms of the Lease.



*2.- Front Desk Space*

Under the terms of the Lease, Landlord was required to allow our client to have a registration area and perform registration activities therein in the event that such area was ever expanded. In prior correspondence (June 1st, 2018) you have indicated that our client would be granted a space in the registration area. However, our client informs that, as of this date, an appropriate space has not yet been provided and our client only has a small fraction of space at the corner of Xtreme's front desk without adequate partition or signage. Our client has not been allowed to place its own signage and is neither represented on the TVs in the back wall of the front desk.

Our client has repeatedly sought to work with Xtreme to find a mutually acceptable solution to the front desk situation but to no avail. In fact, in an effort to accommodate Xtreme's customers and to avoid congestion, RJ agreed to use a side entrance (used as an emergency exit-evacuation route) if Xtreme was hosting large visiting groups. However, this accommodation on the part of RJ was used against it when the Landlord repainted the side entrance hallway which had the RJ green color and replaced it with graphics unrelated to RJ's brand-- all of which, coupled with all the issues in the building's front entrance and lack of proper signage, makes it virtually impossible for customers to find the entrance to our client's facilities and which in turn has detrimentally impacted RJ's business operations.

*3.- Marketing Campaigns*

Under the terms of Section 14.05(c)(i) of the Lease our client is responsible for contributing to joint marketing campaigns and is therefore entitled to be properly represented in the park's marketing campaigns. However, in retaliation for our client's past claims, Landlord and/or Xtreme have eliminated all references and traces of our client from the park's website (our client had been represented in the website since November 2016) again in violation of the Lease, all of which has negatively impacted our client's business.



*4.- Other breaches and intentional misconduct*

As you were previously notified, our client continues to be negatively impacted by Xtreme's significant delays in the delivery of food to our client's customers many of which have been delayed for more than 30 minutes after ordering. This pattern of delays coupled with contractual restrictions on our client's ability to allow food into the leased premises continues to negatively affect RJ's good reputation and ability to conduct business.

Moreover, in the past RJ has notified the Landlord that it was making modifications to common areas without affording RJ reasonable accommodations. For example, the placement of a ropes course and barricades in front of RJ's facilities unnecessarily hindered visibility and access to RJ's facilities for a period of 4-6 weeks which in turn adversely impacted its ability to draw customers. Also, as communicated in prior correspondence, the Landlord and/or in conjunction with Xtreme, have in the past prevented RJ's guests (as well as other guests visiting the park) from entering RJ's facilities during several lockout events, all of which also resulted in decreased revenues and negative financial consequences for our client.

Finally, and as you were previously advised, Landlord has, without RJ's consent, installed security cameras ***within*** the leased premises which have unfettered view of all of the leased premises. While RJ does not object to security cameras being conspicuously placed in the property's common areas and exits, it strongly objects to the current placement of the cameras which encroaches upon the rights of RJ's customers and their reasonable expectation of privacy as well as RJ's privacy interests.

Formal notice is given to Landlord and to Xtreme to immediately and finally cease and desist from the above-described malicious conduct. Landlord is hereby also directed to remediate all contractual breaches described above within thirty (30) days as required under Section 17.03 of the Lease. Should the conduct not stop or the breaches not be remedied our client shall have no option but to take

4



appropriate legal action to protect against the further and continued impairment of its business interests and to enforce its property rights.

      Very truly yours,

      Thinkeen Legal, P.A.

      By: _____
           Christian Perez Font, Esq.

.cc   Seven Stars on the Hudson Corp.
      d/b/a Rockin' Jump Fort Lauderdale
      2108 NE 63rd Street
      Fort Lauderdale, FL 33308
      Att: Jens Berding

.cc   Kathleen Daly, Esq.