UNITED STATED BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

SEVEN STARS ON THE HUDSON CORP.

Debtor,
_____/

Case No.: 19-17544-SMG

Chapter 11

### OBJECTION OF MDG POWERLINE HOLDINGS, LLC TO DEBTOR'S MOTION TO ASSUME UNEXPIRED LEASE OF NONRESIDENTIAL PROPERTY

MDG Powerline Holdings, LLC ("Landlord"), by and through undersigned counsel, objects to the Debtor's *Corrected* Motion to Assume Unexpired Lease of Nonresidential Property Pursuant to Bankruptcy Code § 365(a)(d)(4)[1] [ECF No. 129] (the "Motion").

### PRELIMINARY STATEMENT

By the Motion, Debtor seeks to assume the pre-petition lease it entered into with Landlord on or about November 23, 2015 (the "Lease"),[2] "subject to the outcome of the Adversary Proceeding."  It is not clear what relief Debtor actually seeks by inclusion of the phrase "subject to" in its Motion, but regardless, for the reasons set forth below, the Lease cannot be assumed by Debtor and, therefore, the Motion must be denied and the Lease should be deemed rejected.

Under the Lease, Debtor agreed to lease approximately 18,600 square feet at Landlord's premises (the "Premises") for ten years for the operation of a trampoline park and family fun center under the trade name "Rockin' Jump".  Until very recently, Debtor has operated under the

---

[1] Section 365(a)(d)(4) does not exist within the Bankruptcy Code.  For purposes of this Objection, Landlord assumes Debtor is seeking relief under § 365(a) of the Bankruptcy Code.  Section 365(d)(4) sets forth the time frame by which Debtor must seek assumption or rejection of an unexpired lease of nonresidential real property under which it is the lessee.
[2] A copy of the Lease, as amended, is attached to this Objection as Composite Exhibit A.

DBA of Rockin' Jump, as set forth in Debtor's voluntary petition [ECF No. 1, p.1].[3] That is not surprising, as the Lease expressly requires that Debtor operate as a Rockin' Jump franchise as a material and critical term of the Lease.

On April 16, 2020, the Court entered its *Order (i) Granting Debtor's Motion to Approve Settlement Agreement with Rocking' Jump, LLC and Rockin' Jump Franchise, LLC and (ii) Canceling Status Conference* [ECF No. 161] (the "Rockin' Jump Settlement Order").  Paragraph 5 of such Order provides that the Rockin' Jump franchise agreement is deemed rejected by the Debtor pursuant to section 365 of the Bankruptcy Code.  Thus, despite the express requirement to do so, Debtor is no longer operating as a Rockin' Jump franchise.  For that reason alone, the Motion must be denied.

In addition, as explained below, Debtor's ability to perform under the Lease (and to meet its administrative obligations) has not been demonstrated and is in serious doubt.  Since the fall of 2019, the large majority of its sales have been generated by "advance sales" or Groupon-like discounts.  Moreover, Debtor currently is not operating as a result of COVID-19.

Accordingly, Landlord respectfully requests that this Court deny the Motion and order the rejection of the Lease.

## BACKGROUND

**The Lease**

1.     Landlord and Debtor entered into the Lease on or about November 23, 2015. Under the Lease, Debtor agreed that it would be required to, and could only, operate as a **"Rockin' Jump"** franchise.  See Ex. A, p. 1 and Section 6.01 (emphasis added).

---

[3] See Application for Registration of Fictitious Name filed by Debtor to register "Rockin' Jump Fort Lauderdale", attached as Exhibit B.

2.      The initial term of the Lease is for ten years.  <u>See</u> Ex. A., p.1 and Section 2.03. Subject to separate obligations for taxes, utilities and operating expenses, the initial annual rent under the Lease was $340,000 through the end of the fifth year, at which time the annual rent payment would increase in accordance with the terms of the Lease.  <u>See</u> Ex. A, pp. 1-2.

3.      Pursuant to Section 6.01 of the Lease, Debtor is only permitted to use the Premises "for the purposes and **under the trade name(s) specified** in the Basic Lease Provisions, and for no other purposes and under no other trade name whatsoever . . ." (emphasis added).  As stated above, the "Basic Lease Provisions" require that the Premises be operated as a "Rockin' Jump" trampoline center.

4.      The obligations under the Lease are guaranteed by Jens Berding and Eddy Manzo-Berding (collectively, "<u>Guarantors</u>") pursuant to separate Lease Guaranty agreements entered into at the time of the Lease (the "<u>Guaranty</u>").[4]

5.      Debtor has failed to make its monthly payment due to Landlord under the Lease for April 2020.

**<u>The Franchise Agreement</u>**

6.      On or about December 15, 2014, Rockin' Jump, LLC ("<u>Franchisor</u>") and Five Stars on the Hudson, LLC (the "<u>Five Stars LLC</u>") entered into a Franchise Agreement with the purpose to operate a trampoline park (the "<u>Franchise Agreement</u>").  <u>See</u> Ex. A attached to ECF No. 39.  On or about December 7, 2015, Franchisor consented to the assignment of such Franchise Agreement by Five Stars LLC to Debtor.  <u>See</u> Ex. B attached to ECF No. 39.

---

[4] Copies of the Lease Guaranty agreements are attached as Exhibits D and E to the Lease.

7. On August 5, 2019, Franchisor filed its *Motion for an Order Granting Relief From the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1)* [ECF No. 39] (the "Stay Relief Motion") seeking authority to terminate the Franchise Agreement with Debtor and to terminate insurance policies provided to Debtor by Franchisor.

8. As alleged by Franchisor in the Stay Relief Motion, pre-petition, Debtor was in default of its obligations under the Franchise Agreement for failure to pay royalties and advertising fees under the Franchise Agreement and for unpaid insurance premiums.

9. On April 16, 2020, the Court entered the Rockin' Jump Settlement Order, pursuant to which, among other things, the Franchise Agreement was expressly rejected by Debtor.

**ARGUMENT**

**Debtor Cannot Cure Current Defaults**

10. Pursuant to section 365(a) of the Bankruptcy Code, subject to subsections (b), (c), and (d) of such section, a debtor may assume an unexpired, non-residential real estate lease.

11. However, the right to assume an unexpired, non-residential real estate lease is not unlimited and a debtor must provide certain protections in favor of a landlord. A debtor may not assume an unexpired, non-residential real estate lease unless it (a) cures, or provides adequate assurance that it will promptly cure, any defaults under the Lease; (b) compensates, or provides adequate assurance of prompt compensation, to Landlord for any actual pecuniary loss to Landlord resulting from any defaults; and (c) provides adequate assurance of future performance under the Lease. See 11 U.S.C. § 365(b)(1).

12. "Curing a default" means that the existing event of default is remedied and the consequences thereof are nullified. In re Johnson, 29 B.R. 104, 105 (Bkrtcy.S.D.Fla.1983) (citing In re Taddeo, 685 F.2d 24, 27 (2nd Cir. 1982)) (disagreed with on different grounds by In re Pfleiderer, 75 B.R. 363 (Bkrtcy.S.D.Fla.1987)). A debtor must cure defaults in accordance with the applicable underlying contract or agreement, so long as that document complies with relevant non-bankruptcy law. In re Sagamore Partners, Ltd., 620 Fed. Appx. 864, 869 (11th Cir. 2015).

13. The purpose of requiring a debtor to first cure any defaults as a prerequisite to assuming a previously defaulted contract is to put the parties back in the positions they would have been in had no defaults occurred and no bankruptcy petition had been filed. See In re Fifth Taste Concepts Las Olas, LLC, 325 B.R. 42, 49 (Bkrtcy.S.D.Fla.2005). Section 365(b)(1) applies to monetary and non-monetary defaults and obligations. See e.g. In re Chapin Revenue Cycle Management, LLC, 343 B.R. 728 (Bkrtcpy.M.D.Fla.2006), In re Texas Health Enterprises, Inc., 246 B.R. 832, 843 (Bankr. E.D. Tex. 2000), In re Carterhousel, Inc., 94 B.R. 271, 273 (Bankr.D.Conn.1988).

14. Here, there are both monetary and non-monetary defaults. As stated above, Debtor failed to pay April rent due to Landlord under the Lease.

15. More importantly, as it relates to the pending Motion, Debtor is in default under the Lease because it no longer operates as a Rockin' Jump franchise. The Rockin' Jump Settlement Order made it crystal clear that the Franchise Agreement between Debtor and Franchisor is rejected as of April 16, 2020. Thus, put simply, Debtor cannot provide any "adequate assurance" to Landlord of either its ability to cure its current failure of operating as a Rockin' Jump location or its future performance of the franchise obligation under the Lease. Thus, Debtor cannot assume the Lease pursuant to section 365(b)(1).

**Debtor Cannot Provide Adequate Assurance of Future Performance**

16. Separate from Debtor's failure to operate as a Rockin' Jump franchise, Debtor has failed to provide adequate assurance of future performance under the Lease. See 11. U.S.C. §365(b)(1)(C).

17. Currently, Debtor is operating under a consensual cash collateral order with Wells Fargo Bank, pursuant to which it is making minimal monthly adequate protection interest-only payments. However, upon an exit from bankruptcy, if any, that obligation owed to Wells Fargo will need to be addressed.

18. In addition, as Debtor's monthly operating reports amply demonstrate, throughout this case, even with the limited interest-only adequate protection payments made to Wells Fargo and with the benefit of advance sales through Groupon and other aggregators, Debtor has not built up excess cash. Landlord is also aware that some portion (which may be a substantial portion) of sales generated during the fall and holiday seasons in 2019 and early 2020 were accomplished through "advance sales" that allowed patrons to pay currently for future rights to enter the Premises.

19. Most recently, since mid-March 2020, Debtor has ceased operations at the Premises pursuant to executive orders issued by Broward County, Florida and Governor Ron DeSantis. When, and to what extent, Debtor's operations at the Premises will re-open is unknown. As Debtor has stated at prior hearings in this case, Guarantors have leveraged all of their personal assets, including their home, to invest into Debtor's business.

20. It is Debtor's burden to demonstrate that there is adequate assurance of future performance under the Lease. See 11 U.S.C. § 365(b)(1)(C). Debtor has not done so and in fact cannot do so. Accordingly, for this reason, too, the Motion must be denied.

WHEREFORE, Landlord respectfully requests that this Court (a) deny the Motion and order that the Lease is deemed rejected, as the reasons for the denial of the Motion cannot be overcome by Debtor and (b) grant such other relief as the Court deems just and appropriate.

Dated: April 27, 2020

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
*Counsel for MDG Powerline Holdings, LLC*
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131
(305) 374-7580

By: /s/ *Jay M. Sakalo*
    Jay M. Sakalo
    Fla. Bar No. 156310

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF Notice of Electronic Filing to all Parties appearing in this case who are registered to receive electronic noticing in this case via CM/ECF on this 27th day of April, 2020.

By: /s/ *Jay M. Sakalo*
Jay M. Sakalo

**EXHIBIT A**

Copy of Lease

MIAMI 6601122.3 84482/88966

**EXHIBIT B**

d/b/a Rockin' Jump