**IN WITNESS WHEREOF** the parties hereto have signed this Lease.

Witnesses:

_____
(Printed Name)

_____
Mary Bertoni
(Printed Name)

Witnesses:

_____
(Printed Name)

_____
Mary Bertoni
(Printed Name)

LANDLORD:

_____

TENANT: Seven Stars on the Hudson Corp

By: Jens Berding, President

_____

## EXHIBIT A

## PREMISES

THIS EXHIBIT IS DIAGRAMMATIC ONLY AND IS INTENDED ONLY TO SHOW THE GENERAL LOCATION AND CONFIGURATION OF THE PREMISES AS THEY ARE CURRENTLY EXPECTED TO EXIST AS OF THE DATE THE PREMISES ARE DELIVERED TO TENANT.

**EXHIBIT B**

### LANDLORD'S AND TENANT'S WORK

All terms in this Exhibit B that are defined in the body of the Lease to which this Exhibit is attached shall have the meanings provided for them in the body of the Lease. As used herein, "Tenant's Work" shall mean any work performed by Tenant, whether it is work performed prior to the Rental Commencement Date pursuant to the Working Drawings approved by Landlord ("Tenant's Initial Work") or work subsequent thereto.

**SECTION I.    LANDLORD'S WORK**

1.    Except as may be otherwise specifically set forth in this Lease, Tenant shall take the Premises in an "as is" condition and all work to be performed at the Premises shall be performed by Tenant at Tenant's expense. Pursuant to Section 19.02 of the Lease, there is no Landlord's Work.

2.    Landlord does not warrant any information Landlord may have furnished or will furnish Tenant regarding the Premises. It shall be Tenant's responsibility to verify existing field conditions and measurements of the Premises. Tenant's failure to verify the existing conditions and measurements of the Premises shall not relieve Tenant of any expenses or responsibilities resulting from such failure, nor shall Landlord have any liability or obligations to Tenant arising from such failure.

**SECTION II.    TENANT'S WORK**

1.    Subject to the provisions of this Lease, including this Exhibit, Tenant shall construct the Premises as provided in Article 19 of the Lease.

2.    Tenant shall perform Tenant's Work in accordance with all Laws including, without limitation, the building code of the jurisdiction in which the Property is located and all requirements of the Americans with Disabilities Act.

3.    Tenant shall prepare its plans and specifications for Tenant's Work in accordance with this Exhibit, Landlord's design criteria for the Property, as the same may be revised or supplemented from time to time, and such other criteria as Landlord may furnish Tenant (such criteria herein referred to as the "Design Criteria"). The Design Criteria contains specific criteria for the design and performance of Tenant's Work, including the mechanical and electrical work.

4.    Tenant's Initial Work and, except to the extent as may be specifically otherwise provided in the Lease, all subsequent work in the Premises which Tenant may wish to perform, shall be subject to the advance written approval by Landlord, not to be unreasonably withheld or delayed.

5.    Tenant shall, prior to commencement of Tenant's Work, obtain all required building and other permits at Tenant's expense and post said permits at the Premises as required.

6.    The loads imposed by Tenant's Work at the Premises (including dead and live loads) shall not exceed the allowable load capacity of the existing structural systems and components thereof.

7.    Tenant shall use only new, high quality materials for Tenant's Work, including all improvements, equipment, trade fixtures and all other fixtures.

8.    Tenant shall make no marks or penetrations into the roof, upper floor decks, exterior walls, or floors, unless approved by Landlord in writing in advance. All penetrations shall be made by Landlord's contractor.

9.    If any of Tenant's Work being performed by Tenant to connect to Landlord's utilities requires access through the premises of any other tenant or otherwise will affect any other tenant and Landlord has approved such Tenant's Work, Tenant shall be responsible for coordinating such Tenant's Work with such other tenant, restoring said tenant's premises to its original condition following Tenant's Work, and compensating said other tenant for any costs incurred by it on account of such Tenant's Work.

10.    If any of Tenant's Work necessitates any special work outside the Premises, such as, but not

limited to, structural modification, increasing the size of electric conduit or adding or relocating water service or sanitary service, Landlord, at Landlord's election, may perform such work and Tenant shall reimburse Landlord the cost thereof plus 15% thereof for administration, or require Tenant perform the work at Tenant's cost.

     11.     Tenant shall retain Landlord's identification signs, if any, or, at Tenant's cost, provide new signs for Landlord's utilities, valves, and other such devices in the Premises.

     12.     Landlord may at its election require any aspect of Tenant's Work to be tested, and Tenant shall cooperate with any such testing procedure.

     13.     No approval from Landlord with respect to any aspect of Tenant's Work shall be valid unless in writing.

**SECTION III.**    **CONSTRUCTION**

     1.     Tenant may not commence any Tenant's Work until Landlord has approved Tenant's Working Drawings, all required insurance certificates have been furnished Landlord, all building permits have been obtained, and Tenant has complied with all other requirements herein and elsewhere in this Lease.

     2.     A representative of Tenant shall meet with Landlord or its agent prior to start of construction to discuss construction-related items.  Tenant's representative shall contact Landlord in advance to schedule said meeting at a mutually satisfactory time and place.

     3.     Without limitation to any provision of this Lease, prior to commencement of any Tenant's Work at the Premises Tenant shall furnish Landlord the following:

     a.     The names, addresses, representatives and telephone numbers of the general contractor and all subcontractors ("Tenant's Contractors").

     b.     Amounts of the general contract and each subcontract.

     c.     Certificates of Insurance evidencing the insurance required of Tenant and Tenant's general contractors as provided in this Lease, including this Exhibit B.

     d.     A copy of the building permit(s).

     e.     A detailed construction schedule.

     f.     If required by Landlord, a deposit (the "Construction Deposit") to cover damage to Landlord's property during Tenant's construction and payment of any charges due from Tenant.  The amount of the Construction Deposit shall be as specified in the Basic Lease Provisions. The Construction Deposit shall be returned to Tenant upon completion of all Tenant's Work in accordance with the approved Working Drawings, provided Tenant owes no amounts to Landlord in connection with the construction.

     g.     Prior to commencement of Tenant's Work, Tenant shall furnish to Landlord, a copy of the executed contract between Tenant and Tenant's general contractor covering all of Tenant's obligations under this Exhibit B. Such contract shall be subject to Landlord's written approval for form and substance.

     4.     All Tenant's Contractors shall be bondable, licensed contractors, having good labor relations, capable of working in harmony with Landlord's general contractor and other contractors in the Property.  Tenant shall coordinate Tenant's Work with other construction work at the Property, if any.  Landlord specifically reserves the right to approve Tenant's Contractors.  If Landlord does not give Tenant such approval with respect to any contractor(s) Tenant shall contract with another general contractor and/or subcontractors(s), as the case may be, for the completion of Tenant's Work.

     5.     In addition to the items in paragraph 3 of this <u>Section IV</u> above, Landlord may require either or both of the following:

a.    Proof in form satisfactory to Landlord of Tenant's financial ability to cause Tenant's Work to be completed and fully paid for prior to opening for business.

b.    A completion bond or an irrevocable letter of credit in Landlord's favor in the amount of the cost of Tenant's Work which Landlord may draw upon in order to pay the Tenant's Contractors if Tenant fails to pay for any of its Work.

6.    Tenant's Work shall be subject to the inspection of Landlord's representative from time to time during the period in which the Work is being performed.

7.    Tenant's general contractor shall maintain at the Premises during construction a complete set of approved Working Drawings bearing Landlord's approval stamp.

8.    Temporary Facilities.

a.    If not already available in the Premises, Tenant shall provide temporary heat, air-conditioning and ventilation for the Premises during construction if Tenant desires the same.

b.    Tenant shall make the necessary temporary electrical connections at a source designated by Landlord prior to beginning Tenant's Work at the Premises for electricity during Tenant's construction. Tenant shall pay for said electricity as billed by the electrical company or by Landlord (at Landlord's actual costs therefor), as is applicable.

c.    If Tenant requires water service during construction and Landlord is able to provide it, Landlord do so and bill Tenant as Landlord reasonably determines.

d.    Tenant shall place all trash in trash containers at a pick-up area or areas designated by Landlord. Tenant shall be responsible for breaking down boxes. Tenant shall furnish its own trash containers at its cost unless Landlord elects to furnish the containers. If Landlord furnishes the trash containers, Tenant shall reimburse Landlord's actual costs therefor. Tenant shall provide trash removal service at Tenant's own cost from the pick-up areas unless Landlord elects to provide the trash removal service. Tenant shall not permit trash to accumulate within the Premises, in the corridor adjacent to the Premises, in the loading docks, or in any areas exterior to the Premises. Should Landlord elect to remove Tenant's trash from the designated pick-up areas for any reason, the charge to Tenant shall be equal to Landlord's actual costs for such removal, plus 15% thereof for administrative costs.

e.    Tenant shall provide temporary sanitary facilities for its construction personnel at a location designated by Landlord. Landlord reserves the right to provide temporary sanitary facilities for Tenant's use and charge Tenant Landlord's actual cost for such service.

f.    Tenant shall take all necessary precautions to contain construction "wash-up" liquids (such as grout wash, paint wash, etc.) and prevent entry of such liquids into Landlord's sanitary or storm waste system. All construction wash-up shall be conducted at a location designated by Landlord.

g.    In the event Tenant is performing Tenant's Work concurrent with the construction of the building shell, Tenant may schedule usage of the material hoist or service elevator for conveyance of Tenant's materials. Hours of usage shall be solely at the discretion of Landlord's general contractor and all scheduling shall be conducted directly with Landlord's general contractor. Tenant shall reimburse Landlord's actual cost therefor.

9.    During the performance of Tenant's Initial Work, a temporary barricade shall be required in front of the entire Premises. Landlord will provide a temporary flush mounted storefront barricade in front of the Premises. Tenant shall reimburse Landlord for such barricade upon demand at a rate of $75.00 per lineal foot. In addition, Tenant shall be responsible for all modifications to the barricade that may be required to perform Tenant's storefront construction. Any pop-out of the barricade must be pre-approved by Landlord in writing and must be performed during non-operating hours. Upon completion of Tenant's storefront construction, the barricade must be removed and disposed of by Tenant at Tenant's expense. Landlord may at its election require that the barricade include a graphic design which shall be furnished and installed by Tenant at Tenant's expense and shall be subject to Landlord's prior written approval. Landlord shall have the right to remove any non-permitted signs without liability or

prior notice.

10.     The cost of any work permitted or required to be performed by Landlord on behalf of Tenant under this Exhibit shall become due and payable in full within thirty (30) days after Tenant has been invoiced for same by Landlord and said charges shall be deemed Rent under the Lease.

11.     Upon completion of Tenant's Initial Work, Tenant shall notify Landlord.  Upon said notification, Landlord's designated representative shall inspect the Premises and, if the Premises are constructed in accordance with the approved Drawings, said representative shall issue a Letter of Acceptance for the Premises.  If Landlord believes the Premises have not been constructed in accordance with the approved Drawings, Landlord shall so notify Tenant or Tenant's Contractor.  Tenant shall furnish Landlord a copy of a certificate of occupancy for the Premises before Tenant opens for business.

12.     Upon completion of Tenant's Initial Work, Tenant shall promptly furnish to Landlord lien waivers and sworn statements from all contractors who performed labor or supplied materials in connection with Tenant's Initial Work showing that they have been paid in full.

13.     All work performed by Tenant during its construction period, or otherwise during the Term, shall be performed so as to cause the least possible interference with other tenants and the operation of the Property, and Landlord shall have the right to impose reasonable requirements with respect to timing and performance of the Work in order to minimize such interference.  Work causing noise, odor or vibration outside the Premises shall be performed during hours that comply with local ordinances and do not adversely impact tenants within the Property. Tenant shall take all precautionary steps to protect its facilities and the facilities of others affected by the Work (including Common Area flooring in the vicinity of the Premises) and shall police same properly.  Construction equipment and materials are to be located in confined areas and truck traffic is to be routed to and from the site as directed by Landlord so as not to burden the construction or operation of the Property.  All Work shall be confined to the Premises.  Tenant's Contractor shall coordinate with Landlord for the delivery and removal of its equipment and materials. Landlord shall have the right to order Tenant or any Tenant's Contractor who willfully violates the above requirements to cease work and to remove its equipment and employees from the building.  Tenant and/or Tenant's Contractor shall take precautions to protect adjacent premises and premises on common air distribution systems from airborne dust, dirt and contaminants, and volatile organic compounds, such as paint thinner or varnish vapors.

14.     Tenant's Contractor shall perform all Work in a manner and at times that do not impede or delay the performance of Landlord's Work.  Tenant and Tenant's Contractor shall not do anything that jeopardizes the labor relations of others in the Property.  Tenant shall be responsible for any costs and expenses arising from any delays in the completion of any work in the Premises, and any damage to such work caused by Tenant's Contractor.

15.     Tenant shall cause all Tenant's Contractors to maintain during the construction period the following insurance: (i) commercial general liability insurance, with minimum coverage of $1,000,000 for bodily injury and property damage combined single limit per occurrence and $2,000,000 in the aggregate on an annual basis, and shall include the following coverages:  premises/operations; independent contractors for contractor's and the subcontractor's liability arising out of the work and operations of subcontractors; aggregate limits of insurance per project; broad form contractual liability specifically in support of, but not limited to, the indemnity provisions of the Lease; personal injury liability with employment and contractual exclusions removed; broad form property damage, including completed operations (this coverage is to be maintained for four (4) years after completion of the Work); explosion, collapse and underground coverage; products/completed operations (this coverage is to be maintained for four (4) years after the final payment agreement with any Contractor is executed); a separation of insureds or severability of interests provision with regard to the general liability policies applicable to the named insured(s) and all additional insureds; (ii) workers' compensation insurance with respect to each Contractor's workers at the site or involved in Tenant's Work, in the amounts required by statutes of the States in which Tenant's Work is performed and the Contractor's employees reside, with coverage for all of Contractor's workers at the Property and anyone directly employed by the Contractor and anyone for whom the Contractor may be liable for workers' compensation claims that may arise out of or result from operations under the contract; (iii) employer's liability insurance in the amount of at least $500,000 per accident, and at least $500,000 per each employee for disease; (iv) comprehensive automobile liability insurance with minimum coverage of $1,000,000 per occurrence combined single limit for bodily injury (including wrongful death) and property damage liability covering all owned, leased, hired or non-owned vehicles, including the loading and unloading thereof; (v) builder's risk property insurance upon the entire Work to the full replacement cost value thereof; and (vi) umbrella liability coverage with a minimum coverage limit of $5,000,000 per occurrence and in the aggregate. No portion of the policies described above shall consist of self-insurance or contain a self-insured retention.  Contractors may have a deductible on these policies of no more than $5,000. Landlord, Landlord's managing agent, and such other parties as are designated by Landlord, shall be

additional insureds under (i), (iv), (v) and (vi) above.  All policies will be endorsed to be primary to, and shall receive no contribution from, the additional insureds or any insurance carried by the additional insureds. All insurance required hereunder shall be provided by responsible insurers rated at least A and XIII in the then current edition of Best's Key Rating Insurance Guide and shall be licensed in the State in which the Property is located. All such insurance shall provide for a waiver of subrogation by the insurance carriers. Tenant shall provide, or cause its Contractors to provide, such certificates prior to any Work being performed at the Premises.  Such certificates shall state that the coverage may not be changed or cancelled without at least sixty (60) days' prior written notice to Landlord. The certificate of insurance shall contain the following information:

Name and Address of Property:  5300 N. Powerline Road, Fort Lauderdale, FL 33309

Name of Owner:  Dezer Powerline, LLC and MDG Powerline Holdings, LLC

Name and address of Certificate Holder:   Dezer Powerline, LLC and MDG Powerline Holdings, LLC
18001 Collins Avenue, 31st Floor
Sunny Isles Beach, Florida 33160

Additional Insureds:  As listed in the Basic Lease Provisions of the Lease.

## EXHIBIT C

## RULES AND REGULATIONS

A.    Tenant covenants and agrees that Tenant will comply with (and require all of Tenant's employees, agents and contractors to comply with, such that the use of "Tenant" hereunder is deemed to refer to Tenant and all such parties) all reasonable rules and regulations set by Landlord from time to time for the operation of the Property or the Premises, including but not limited to the following:

1.    All deliveries to or from the Premises shall occur only at such times, in the areas and through the entrances designated for such purpose by Landlord.

2.    Tenant shall keep and maintain the Premises in a clean and sanitary condition satisfactory to Landlord. Tenant shall also remove any garbage and refuse generated by Tenant or by the use of the Premises from all areas outside of the Premises, including any common areas and loading areas. All garbage and refuse shall be kept inside the Premises in the type of container specified by Landlord, and shall be placed outside of the Premises prepared for collection in the manner and at the times and places specified by Landlord. Tenant shall pay the cost of removal of any of Tenant's refuse, including the cost of any garbage removal service provided or designated by Landlord. Tenant shall use any trash compactor that Landlord may elect to provide for the general use of Tenant or other tenants in a designated area of the Property. If any part of Tenant's business shall consist of the preparation and/or sale of food, including without limitation the operation of a restaurant, snack shop or food market, Tenant shall provide refrigerated garbage containers at Tenant's expenses for the disposal of food scraps and refuse.

3.    No radio or television aerials or other devices shall be erected on the roof or exterior walls of the Premises or the Property without first obtaining Landlord's written consent (which may be withheld in Landlord's sole and absolute discretion), in each and every instance. Any aerial or device installed without such written consent shall be subject to removal at any time without notice by Landlord at Tenant's expense.

4.    No loudspeakers, televisions, phonographs, radios, tape players or other devices shall be used in a manner so as to be heard or seen outside of the Premises without the prior written consent of Landlord.

5.    The plumbing facilities shall not be used for any purpose other than the purpose for which they were constructed and no foreign objects or substances of any kind shall be disposed of therein. All grease traps, if any, shall be installed and maintained in accordance with applicable law and in accordance with Landlord's requirements. The expense of any breakage, stoppage or damage resulting from a violation of this regulation shall be borne by Tenant.

6.    Tenant shall keep the Premises free of rodents, insects and other pests and contract, at its expense, for termite and pest extermination services covering the Premises, which shall be performed not less than semimonthly.

7.    Tenant shall not burn any trash or garbage of any kind in the Premises or the Property.

8.    Tenant shall periodically clean all glass surfaces of the Premises, including, without limitation, the exterior and interior partitions of all windows, doors and all other glass. At Tenant's expense, Tenant shall participate in any reasonable window cleaning program that may be established by Landlord for all or substantially all other stores in the Property.

9.    Tenant shall not solicit business or distribute advertising or promotional material in the common areas of the Property.

Exhibit C - 1

10.     Tenant shall not take any action which would violate Landlord's labor contracts, if any, affecting the Property, nor create any work stoppage, picketing, labor disruptions or dispute, or any interference with the business of Landlord or any other tenant or occupant of the Property or with the rights and privileges of any customer or either person(s) lawfully in and upon the Property, nor shall Tenant cause any impairment or reduction of the good will of the Property.

11.     Tenant shall pay before delinquency all license fees, permit fees and any other charges of a similar nature required in order to lawfully conduct business in the Premises.

12.     Tenant shall use the Property name and logo, as either may be changed from time to time, in referring to the location of the Premises in all newspaper, radio and television or other advertising.

13.     Tenant shall store and/or stock in the Premises only such merchandise as Tenant is permitted to offer for sale in the Premises pursuant to the Lease.

14.     Tenant shall not conduct or permit any fire, bankruptcy, auction or "going out of business" sale (whether real or fictitious) in the Premises, or utilize any unethical business practices or methods of operation.

15.     Tenant shall not perform any act or carry on any practice which may damage, mark or deface the Premises or any other part of the Property.

16.     Tenant shall not use any forklift truck, tow truck or any other powered machine for handling freight in the Property, except in such manner and in those areas in the Property as may be approved by Landlord in writing.  All such equipment shall have rubber wheels only.

17.     Tenant shall not place a load on any floor in the interior delivery system, if any, or in the Premises, or in any area of the Property, exceeding the floor load that such floor was designed to carry, nor shall Tenant install, operate or maintain therein any heavy item or equipment except in such manner as to achieve a proper distribution of weight.

18.     Tenant shall not install, operate or maintain in the Premises or in any other area of the Property any electrical equipment which does not bear underwriter's approval, or which would overload the electrical system or any part thereof beyond its capacity for proper and safe operation as determined by Landlord.

19.     Tenant shall not suffer, allow or permit any vibration, noise, light, odor or other effect to emanate from the Premises, or from any machine or other installation therein, or otherwise suffer, allow or permit the same to constitute a nuisance or otherwise interfere with the safety, comfort and convenience of Landlord or any of the other occupants of the Property or their customers, agents or invitees or any others lawfully in or upon the Property.  Upon notice by Landlord to Tenant that any of the aforesaid is occurring, Tenant agrees to forthwith remove or control the same.

20.     Tenant shall not use or occupy the Premises in any manner or for any purpose which would injure the reputation or impair the present or future value of the Premises, the Property and/or the neighborhood in which the Property is located.

21.     Tenant shall not store, display, sell or distribute any alcoholic beverage or any dangerous materials (including without limitation fireworks) unless specifically permitted in the Lease.

22.     Tenant shall not use or occupy the Premises or do or permit anything to be done thereon in any manner which shall prevent Landlord and/or Tenant from obtaining at standard rates any insurance required or desired, invalidate or increase the cost to Landlord of any existing insurance, or which may cause structural injury to any building, constitute a public or private nuisance or violate any present or future laws,

Exhibit C - 2

regulations, ordinances or requirements (ordinary or extraordinary foreseen or unforeseen) of any governmental public or quasi-public authorities now existing or hereafter created having jurisdiction in the Premises or the Property. Any increase in the cost of Landlord's insurance resulting from the type of merchandise sold by Tenant in the Premises or resulting from Tenant's use of the Premises (notwithstanding that such use may be a Permitted Use or that such use may have been consented to by Landlord) shall be paid by Tenant.

23. Tenant shall not operate any coin or token operated vending machine or similar device (including, without limitation, pay telephone, pay toilets, scales, amusement devices, and machines for the sale of beverages, foods, candy, cigarettes or other merchandise and/or commodities) within the Premises or in any part of the Property, except in those areas of the Premises designated for the sole and exclusive use of Tenant's employees. Notwithstanding the foregoing, Tenant shall be allowed to operate coin operated massage chairs.

24. Tenant shall not conduct business or any business related activity in the common areas of the Property.

25. Tenant and its employees shall park in the employee parking areas as designated by Landlord.

26. Tenant shall keep its loading facilities, if any, and the sidewalks immediately adjoining the Premises free from trash, litter and obstructions.

27. Tenant shall not permit any hazardous wastes or materials to be brought into the Premises at any time or permit the release, disposal, dumping or storage of hazardous wastes or materials into the septic tanks, sewers or other waste disposal systems of the Property or anywhere in the Property.

28. If Tenant engages in the preparation of food or packaged foods or engages in the use, sale or storage of inflammable or combustible material, Tenant shall install chemical extinguishing devices (such as Ansil) and shall regularly service such devices (except if otherwise provided by the Lease). If gas is used in the Premises, Tenant shall install at its expense gas cutoff devices (manual and automatic).

29. No credit card signs, advertisements or hand lettered signs shall be placed outside of the Premises. All interior signs visible from the common areas of the Property and all service door signs shall be professionally prepared and conform to standards of design established by Landlord from time to time for the Property.

B. Landlord may waive any one or more of these rules for the benefit of any particular tenant or tenants, but no such waiver shall be construed as a waiver by Landlord of such rules in favor of any other tenant or tenants, nor prevent Landlord from thereafter enforcing any such rules against any or all of the tenants of the Property. No waiver by Landlord of any rule or regulation shall be effective unless expressed in a writing signed by Landlord.

C. Landlord reserves the right, at any time, to change or rescind any one or more of these rules and regulations or to make such other and further reasonable rules and regulations as in Landlord's judgment may from time to time be necessary for the management, safety, care and cleanliness of the Property, for the preservation of good order therein and for the convenience of tenants of and visitors to the Property. Any such amendments, deletions or additions to these rules and regulations shall be effective immediately upon delivery of notice thereof to tenants.

D. Tenant shall abide by any additional rules or regulations which are ordered or requested by any governmental or military authority. Tenant shall be responsible for the observance of these rules and any such rules by its employees, agents, clients, customers, invitees and guests.

Exhibit C - 3

       E.      Landlord shall not be responsible to Tenant or to any other person for the non-observance or violation of these rules and regulations by any other tenant or other person.

       F.      Landlord shall, for the enforcement of the covenants, conditions and agreements now or hereafter made a part of this Exhibit C referred to as "Rules and Regulations", have all remedies in this Lease provided for breach of the provisions hereof.

Exhibit C - 4

**EXHIBIT D**

**LEASE GUARANTY**

This Guaranty is made as of this 23 day of _November_, 2015 by Jens Berding (hereafter "Guarantor") with an address of _____, to and in favor of Dezer Powerline, LLC and MDG Powerline Holdings, LLC ("Landlord") with an address of 18001 Collins Ave, 31st Floor, Sunny Isles Beach, FL 33160.

WITNESSETH:

WHEREAS, by Lease Agreement dated _Nov 23_, 2015. Landlord has leased to Seven Stars on the Hudson Corporation ("Tenant") certain premises, as hereafter modified, amended, extended or renewed, (collectively, the "Lease"); and

WHEREAS, Landlord has required the Guarantor to execute this Guaranty of Lease ("Guaranty") as a condition to the Landlord entering into the Lease with the Tenant; and

WHEREAS, Guarantor will receive direct or indirect benefit from the Landlord entering into the Lease with the Tenant.

NOW, THEREFORE, in order to induce Landlord to enter into the Lease and for other good and valuable consideration, the undersigned Guarantor hereby agrees as follows:

1. Guarantor hereby absolutely, unconditionally, and irrevocably guarantees to Landlord the full and prompt payment of all rent and any and all other sums and charges payable by Tenant under the Lease (collectively, the "Payment Obligations") and hereby further guarantees the full and timely performance and observance of all of the covenants, terms conditions and agreements therein provided to be performed and observed by Tenant (the "Performance Obligations" and together with the Payment Obligations collectively, the "Obligations"). In the event of a default under the Lease, Guarantor hereby covenants and agrees with Landlord: (i) to make the due and full punctual payment of all Payment Obligations payable by Tenant under the Lease; (ii) to effect prompt and complete performance of all and each of the Performance Obligations, contained in the Lease on the part of Tenant to be kept, observed and performed; and (iii) to indemnify and save harmless Landlord from any loss, costs or damages arising out of any failure by Tenant to pay or perform any Obligation including, without limitation, attorneys' fees and costs of collection. This Guaranty is a continuing guaranty of payment and performance and is not conditional or contingent upon any attempt to collect from Tenant or upon any other condition or contingency. Notwithstanding the foregoing, the total Obligation pursuant to this Guaranty shall be the Gross Rent, plus sales tax, for up to one year following a Default. The foregoing limitation shall be in effect so long as Tenant returns the Premises to the Landlord and surrenders possession of the Premises in the condition required by the Lease, free of all tenancies or rights or claims of occupancy by Tenant or any party claiming through Tenant ("Release Date"). Otherwise, the total Obligation pursuant to this Guaranty shall continue until the Release Date.

2. In the event of a default under the Lease, Guarantor waives any right to require Landlord to first (i) proceed against Tenant or pursue any rights or remedies with respect to the Lease; (ii) proceed against or exhaust any security that Landlord holds from Tenant; or (iii) pursue any other remedy whatsoever. Landlord shall have the right to enforce this Guaranty regardless of the acceptance of additional security from Tenant and regardless of the release or discharge of Tenant or any guarantor by Landlord or by others, or by operation of law.

3. Guarantor hereby expressly waives: (a) any right of setoff, counterclaim or deduction against amounts due under this Guaranty; (b) notice of the acceptance of this Guaranty and notice of default of Tenant under the Lease;

and (c) the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment or prior performance.

4.  Without limiting the generality of the foregoing, the liability of Guarantor under this Guaranty shall not be deemed to have been waived, released, discharged, impaired or affected by (a) reason of any waiver or failure to enforce or delay in enforcing any of the Obligations, or (b) the granting of any indulgence or extension of time to Tenant, or (c) the assignment of the Lease, or the subletting of the premises by Tenant, with or without Landlord's consent, or (d) the expiration of the term, or (e) if Tenant holds over beyond the term of the Lease, or (f) any merger or reorganization or the release or discharge of Tenant or any other guarantor in any voluntary or involuntary receivership, bankruptcy winding-up or other creditors' proceedings, or (g) the rejection, disaffirmance or disclaimer of the Lease by any party in any action or proceeding, or (h) the release of any collateral held for the Obligations or any other guarantor, or (i) any defect or invalidity of the Lease or (j) the transfer by Guarantor of any or all of the capital stock of Tenant, and shall continue with respect to the periods prior thereto and thereafter. The liability of the Guarantor shall not be affected by any repossession, re-entry or re-letting of the premises by Landlord, provided, however, that the net payments received by Landlord after deducting all costs and expenses of repossession and/or reletting the same (including, without limitation, any attorney fees, brokerage fees and any reasonable costs or expenses incurred in redecorating, remodeling, or altering the premises for reletting), shall be credited from time to time by Landlord to the account of Tenant and Guarantor and Guarantor shall pay any balance owing to Landlord from time to time, immediately upon being given written notice of demand by Landlord in the manner for providing notice set forth in the Lease.

5.  The liability of Guarantor under this Guaranty shall not be released by any modification or amendment to the Lease (including any extension or renewal of the term of the Lease), and in the case of any such modification, the liability of Guarantor shall be modified in accordance with the term of any such modification of the Lease. Guarantor waives any notice of the modification or amendment of the Lease.

6.  Guarantor shall pay Landlord's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection of this Guaranty or in any negotiations relative to the Obligations guaranteed under this Guaranty whether or not a lawsuit is commenced. All rights and remedies of Landlord under this Guaranty shall be cumulative and may be exercised singly or concurrently.

7.  This Guaranty shall remain in full force and effect until the payment or performance of all Obligations and the other amounts payable under this Guaranty (whether or not the Lease shall have been terminated). Until the payment and performance of all Obligations and the amounts payable under this Guaranty, Guarantor:

a.  Shall have no right of subrogation against Tenant by reason of any payments or acts of performance by the Guarantor in compliance with the obligations of the Guarantor under this Guaranty;

b.  Waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor under this Guaranty; and

c.  Subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to the Landlord under the Lease.

8.  This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and the Landlord.

9.  All of the terms, agreements and conditions of this Guaranty shall extend to and be binding upon Guarantor, and the heirs, executors, personal administrators, and/or successors and assigns of Guarantor and shall inure to the benefit of and may be enforced by Landlord, its successors and assigns, and the holder of any mortgage or deed of trust to which the premises may be subject at any time or from time to time.

10. The use of the singular herein shall include the plural and the use of any gender shall include all genders or neuter as the case may be. This Guaranty is entered into in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida.

11. If Guarantor consists of more than one person or entity, the liability of each such person or entity under this Guaranty shall be joint and several.

12. The undersigned individual acknowledges that he/she is a duly authorized agent of the Guarantor with full power and authority to execute and deliver this Guaranty. This Guaranty has been executed and delivered by Guarantor and constitutes the valid, binding and legal obligation of the Guarantor. Guarantor agrees that it will, from time to time, within ten (10) days of Landlord's request, executed and deliver a statement certifying that this Guaranty is unmodified and in full force and effect.

13. All notices under this Guaranty shall be delivered by certified mail, return receipt requested, to the address of the parties first set forth above. All notices shall be effective as of depositing the same in mail.

14. If any provision of this Guaranty or the application thereof to any person or circumstances shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Guaranty and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.

15. As a further inducement to Landlord to enter into the Lease and to accept this Guaranty, Guarantor hereby intentionally, knowingly and voluntarily waives any right to a trial by jury in any lawsuit, proceeding, counterclaim, or any other litigation procedure based upon, or arising out of this Guaranty. In extension of the foregoing, the Guarantor specifically consents to trial before a court respecting any such matter. Guarantor will not seek to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived.

IN WITNESS WHEREOF, the undersigned has set hand and Seal this 23 day of _November_, 2015.

_____

STATE OF FLORIDA        )
COUNTY OF MIAMI-DADE  )

On this ___ day of _____ in the year 2015, before me, the undersigned, personally appeared Jens Berding, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Exhibit  D - 3

## EXHIBIT E

### LEASE GUARANTY

This Guaranty is made as of this 23 day of Nov, 2015 by Eddy Manzo-Berding (hereafter "Guarantor") with an address of _____, to and in favor of Dezer Powerline, LLC and MDG Powerline Holdings, LLC ("Landlord") with an address of 18001 Collins Ave, 31st Floor, Sunny Isles Beach, FL 33160.

WITNESSETH:

WHEREAS, by Lease Agreement dated Nov 23, 2015. Landlord has leased to Seven Stars on the Hudson Corporation ("Tenant") certain premises, as hereafter modified, amended, extended or renewed, (collectively, the "Lease"); and

WHEREAS, Landlord has required the Guarantor to execute this Guaranty of Lease ("Guaranty") as a condition to the Landlord entering into the Lease with the Tenant; and

WHEREAS, Guarantor will receive direct or indirect benefit from the Landlord entering into the Lease with the Tenant.

NOW, THEREFORE, in order to induce Landlord to enter into the Lease and for other good and valuable consideration, the undersigned Guarantor hereby agrees as follows:

1. Unless otherwise stated herein, Guarantor hereby absolutely and irrevocably guarantees to Landlord the full and prompt payment of all rent and any and all other sums and charges payable by Tenant under the Lease (collectively, the "Payment Obligations") and hereby further guarantees the full and timely performance and observance of all of the covenants, terms conditions and agreements therein provided to be performed and observed by Tenant (the "Performance Obligations" and together with the Payment Obligations collectively, the "Obligations"). At the end of the second Lease Year any and all obligations of Guarantor under this Guaranty shall cease. In the event of a default under the Lease, Guarantor hereby covenants and agrees with Landlord: (i) to make the due and full punctual payment of all Payment Obligations payable by Tenant under the Lease; (ii) to effect prompt and complete performance of all and each of the Performance Obligations, contained in the Lease on the part of Tenant to be kept, observed and performed; and (iii) to indemnify and save harmless Landlord from any loss, costs or damages arising out of any failure by Tenant to pay or perform any Obligation including, without limitation, attorneys' fees and costs of collection. This Guaranty is a continuing guaranty of payment and performance and is not conditional or contingent upon any attempt to collect from Tenant or upon any other condition or contingency. Notwithstanding the foregoing, the total Obligation pursuant to this Guaranty shall be the Gross Rent, plus sales tax, for up to one year following a Default. The foregoing limitation shall be in effect so long as Tenant returns the Premises to the Landlord and surrenders possession of the Premises in the condition required by the Lease, free of all tenancies or rights or claims of occupancy by Tenant or any party claiming through Tenant ("Release Date"). Otherwise, the total Obligation pursuant to this Guaranty shall continue until the Release Date.

2. In the event of a default under the Lease, Guarantor waives any right to require Landlord to first (i) proceed against Tenant or pursue any rights or remedies with respect to the Lease; (ii) proceed against or exhaust any security that Landlord holds from Tenant; or (iii) pursue any other remedy whatsoever. Landlord shall have the right to enforce this Guaranty regardless of the acceptance of additional security from Tenant and regardless of the release or discharge of Tenant or any guarantor by Landlord or by others, or by operation of law.

3.  Guarantor hereby expressly waives: (a) any right of setoff, counterclaim or deduction against amounts due under this Guaranty; (b) notice of the acceptance of this Guaranty and notice of default of Tenant under the Lease; and (c) the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment or prior performance.

4.  Without limiting the generality of the foregoing, the liability of Guarantor under this Guaranty shall not be deemed to have been waived, released, discharged, impaired or affected by (a) reason of any waiver or failure to enforce or delay in enforcing any of the Obligations, or (b) the granting of any indulgence or extension of time to Tenant, or (c) the assignment of the Lease, or the subletting of the premises by Tenant, with or without Landlord's consent, or (d) the expiration of the term, or (e) if Tenant holds over beyond the term of the Lease, or (f) any merger or reorganization or the release or discharge of Tenant or any other guarantor in any voluntary or involuntary receivership, bankruptcy winding-up or other creditors' proceedings, or (g) the rejection, disaffirmance or disclaimer of the Lease by any party in any action or proceeding, or (h) the release of any collateral held for the Obligations or any other guarantor, or (i) any defect or invalidity of the Lease or (j) the transfer by Guarantor of any or all of the capital stock of Tenant, and shall continue with respect to the periods prior thereto and thereafter. The liability of the Guarantor shall not be affected by any repossession, re-entry or re-letting of the premises by Landlord, provided, however, that the net payments received by Landlord after deducting all costs and expenses of repossession and/or reletting the same (including, without limitation, any attorney fees, brokerage fees and any reasonable costs or expenses incurred in redecorating, remodeling, or altering the premises for reletting), shall be credited from time to time by Landlord to the account of Tenant and Guarantor and Guarantor shall pay any balance owing to Landlord from time to time, immediately upon being given written notice of demand by Landlord in the manner for providing notice set forth in the Lease.

5.  The liability of Guarantor under this Guaranty shall not be released by any modification or amendment to the Lease (including any extension or renewal of the term of the Lease), and in the case of any such modification, the liability of Guarantor shall be modified in accordance with the term of any such modification of the Lease. Guarantor waives any notice of the modification or amendment of the Lease.

6.  Guarantor shall pay Landlord's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection of this Guaranty or in any negotiations relative to the Obligations guaranteed under this Guaranty whether or not a lawsuit is commenced. All rights and remedies of Landlord under this Guaranty shall be cumulative and may be exercised singly or concurrently.

7.  This Guaranty shall remain in full force and effect until the payment or performance of all Obligations and the other amounts payable under this Guaranty (whether or not the Lease shall have been terminated). Until the payment and performance of all Obligations and the amounts payable under this Guaranty, Guarantor:

a.  Shall have no right of subrogation against Tenant by reason of any payments or acts of performance by the Guarantor in compliance with the obligations of the Guarantor under this Guaranty;

b.  Waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor under this Guaranty; and

c.  Subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to the Landlord under the Lease.

8.  This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and the Landlord.

9.  All of the terms, agreements and conditions of this Guaranty shall extend to and be binding upon Guarantor, and the heirs, executors, personal administrators, and/or successors and assigns of Guarantor and shall inure to

the benefit of and may be enforced by Landlord, its successors and assigns, and the holder of any mortgage or deed of trust to which the premises may be subject at any time or from time to time.

10. The use of the singular herein shall include the plural and the use of any gender shall include all genders or neuter as the case may be. This Guaranty is entered into in the State of Florida and shall be governed by and construed in accordance with the laws of the State of Florida.

11. If Guarantor consists of more than one person or entity, the liability of each such person or entity under this Guaranty shall be joint and several.

12. The undersigned individual acknowledges that he/she is a duly authorized agent of the Guarantor with full power and authority to execute and deliver this Guaranty. This Guaranty has been executed and delivered by Guarantor and constitutes the valid, binding and legal obligation of the Guarantor. Guarantor agrees that it will, from time to time, within ten (10) days of Landlord's request, executed and deliver a statement certifying that this Guaranty is unmodified and in full force and effect.

13. All notices under this Guaranty shall be delivered by certified mail, return receipt requested, to the address of the parties first set forth above. All notices shall be effective as of depositing the same in mail.

14. If any provision of this Guaranty or the application thereof to any person or circumstances shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Guaranty and the application of that provision to other persons or circumstances shall not be affected but rather shall be enforced to the extent permitted by law. This Guaranty shall be construed without regard to any presumption or other rule requiring construction against the party causing this Guaranty to be drafted.

15. As a further inducement to Landlord to enter into the Lease and to accept this Guaranty, Guarantor hereby intentionally, knowingly and voluntarily waives any right to a trial by jury in any lawsuit, proceeding, counterclaim, or any other litigation procedure based upon, or arising out of this Guaranty. In extension of the foregoing, the Guarantor specifically consents to trial before a court respecting any such matter. Guarantor will not seek to consolidate any such action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived.

IN WITNESS WHEREOF, the undersigned has set hand and Seal this _23_ day of _Nve_ , 2015.

_____

STATE OF FLORIDA        )
COUNTY OF MIAMI-DADE )

On this _23_ day of _Nv_ in the year 2015, before me, the undersigned, personally appeared Eddy Manzo-Berding, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

Exhibit E - 3

## APPENDIX F
## ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is executed as of this _23_ day of, _November_, 2015 by and between Seven Starts on the Hudson Corporation ("**Franchisee**") and MDG Powerline Holdings, LLC ("**Landlord**") as an addendum to the Commercial Lease (as amended, renewed, and/or extended from time to time, "the **Lease**") for the Premises located at 5300 N Powerline Road, Fort Lauderdale Florida, (the "**Location**"), dated as of November _23_, 2015.

WHEREAS, Franchisee has executed or intends to execute a Franchise Agreement with Rockin' Jump Franchise, LLC ("**Franchisor**") for the operation of a **ROCKIN' JUMP®** business ("Business") at the Location, and as a requirement thereof, the Lease for the Location must contain the provisions contained in this Addendum; and

WHEREAS, Landlord and Franchisee agree that the terms contained herein shall supersede any terms to the contrary set forth in the Lease;

NOW THEREFORE, in consideration of mutual covenants set forth herein, the execution and delivery of the Lease, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord and Franchisee hereby agree as follows:

1.  Landlord shall deliver to Franchisor a copy of any notice of default or termination of the Lease at the same time such notice is delivered to Franchisee.

2.  Franchisee hereby assigns to Franchisor, with Landlord's consent, all of Franchisee's rights, title and interest to and under the Lease upon any Termination or non-renewal of the Franchise Agreement, but no such assignment shall be effective unless: (a) the Franchise Agreement is Terminated or expires without renewal; and (b) Franchisor notifies the Franchisee and Landlord in writing that Franchisor assumes Franchisee's obligations under the Lease.

3.  Franchisor shall have the right, but not the obligation, upon giving written notice of its election to Franchisee and Landlord, to cure any breach of the Lease and, if so stated in the notice, to also succeed to Franchisee's rights, title and interests thereunder. Notwithstanding the foregoing, Franchisor's right to cure a default of the Lease shall be subject to, and with the time frame for, any cure provisions stated in the Lease. Franchisor's written notice of an election pursuant to this Addendum must occur within thirty days of its right to assume the Lease occuring or within the time frame to cure any Default under the Lease, whichever occurs first.

4.  The Lease may not be modified, amended, renewed, extended or assigned by Franchisee without Franchisor's prior written consent.

5.  Franchisee and Landlord acknowledge and agree that Franchisor shall have no liability or obligation whatsoever under the Lease unless and until Franchisor assumes the Lease in writing pursuant to Article 2 or 3 above.

6.  If Franchisor assumes the lease as provided for in Articles 2 or 3 above, Landlord and Franchisee agree that (i) Franchisee will remain liable for the responsibilities and obligations, including amounts owed to Landlord, prior to the date of assignment and assumption, and (ii) Franchisor will have the right to sublease the Premises to another franchisee, provided the franchisee agrees to operate the Location as a ROCKIN' JUMP business pursuant to a Franchise Agreement with Franchisor. Franchisor will be responsible for the lease obligations incurred after the effective date of the assignment.

7.  In the event Franchisor exercises its right assume the Lease, Landlord will be given the right of first refusal to enter into a franchise agreement, in accordance with the same terms and conditions of Franchisee's agreement with Franchisor.

8.  Landlord and Franchisee hereby acknowledge that Franchisee has agreed under the Franchise Agreement that Franchisor and its employees or agents shall have the right to enter the Location for certain purposes. Subject to the rights of entry included in the Lease, Landlord hereby agrees not to interfere with or prevent such entry by Franchisor, its employees or agents. Landlord and Franchisee hereby further acknowledge that in the event the Franchise Agreement expires (without renewal) or is terminated, Franchisee is obligated to take certain steps under the Franchise Agreement to de-identify the location as a ROCKIN' JUMP business. Landlord agrees to permit Franchisor, its employees or agents, to enter the Location and remove signs, decor and materials displaying any marks, designs or logos owned by Franchisor, provided Franchisor shall bear the expense of repairing any damage to the Location as a result thereof.

9.  Subject to the requirements contained in Exhibit B of the Lease, Landlord agrees to allow Franchisee to remodel, equip, paint and decorate the interior and exterior of the Location pursuant to the terms of the Franchise Agreement and any successor Franchise Agreement under which Franchisee may operate the Business at the Location.

10. Copies of any and all notices required or permitted hereby or by the Lease shall also be sent to Franchisor at 7901 Stoneridge Dr., Suite 503, Pleasanton, CA 94588, or such other address as Franchisor shall specify by written notice to Landlord.

11. Franchisor is a third party beneficiary under this Addendum.

12. References to the Landlord, Franchisee and Franchisor include the successors and assigns of each of the parties.

WITNESS the execution hereof under seal.

LANDLORD:

_Carl Dsdfall_

DATE: _Nov. 23, 2015_

FRANCHISEE:

_Seven Stars on Hudson Corp., By: Jens Berding, Pres._

DATE: _Nov 23_, _2015_

FRANCHISOR:

_____

DATE:_____, _____

## WELLS FARGO BANK, NATIONAL ASSOCIATION
## LANDLORD WAIVER

**TO:**   Wells Fargo Bank, National Association

<u>301 S. Tryon Street, 27th Floor</u>

<u>Charlotte, NC. 28282</u>

In consideration of loans and other extensions of credit now or hereafter made by Wells Fargo Bank, National Association to <u>Seven Stars on the Hudson Corporation</u>   (the "Borrower") which are or will be secured by certain personal property of the Borrower, whether now owned or hereafter acquired (the "Collateral"), as currently described in that certain Security Agreement dated as of _____, _____   and executed by the Bank and the Borrower (herein said agreement and any other security agreement executed by the Bank and the Borrower collectively referred to as the "Security Agreement"), certain of which Collateral may now or in the future be located and/or installed at <u>5300 N Powerline Road; portion of Bays 6 and 7; Fort Lauderdale FL 33309</u>   (the "Premises), the undersigned  landlord hereby agrees as follows:

(a)  That, as long as the Borrower has any obligations outstanding to the Bank, the undersigned waives and relinquishes all rights which the undersigned now has or hereafter acquires in and to the Collateral including, without limitation, all rights of levy or distraint for rent with respect to the Bank's Collateral, which rights are hereby made subordinate and inferior to any now existing or hereafter arising lien or security interest of the Bank in the Collateral;

(b)  That the Collateral may be installed on the Premises and shall not be deemed a fixture or part of the real estate but shall at all times be considered personal property provided the same may be removed without material damage to the Premises;

(c)  That Bank or its representative may enter upon the Premises at any time prior to termination of the Lease to inspect, sell (other than by public auction) or remove the Collateral;

(d)  That, following termination of the Lease, at the option of the Bank said Collateral may remain upon the Premises without charge without the Bank being deemed to be taking possession of the Premises) for a period of 30 days after the receipt by the Bank of written notice by the undersigned of termination of the Lease; and that the Bank may, subsequent to such 30 day period, remain on the Premises at the rental provided under any applicable lease (or, if there is no lease, at a reasonable rent) without incurring any other obligation of the Borrower, during which time the Bank is permitted to sell (other than by public auction) or remove the Collateral;

(e)  That the undersigned does hereby agree to give notice to the Bank of any default by the Borrower in any lease between Borrower and the undersigned affecting the Premises.  Bank reserves the right to and Landlord agrees that Bank at its option may (but shall not be obligated to) cure any default by the Borrower within a period of 30 days following Bank's receipt of such notice;

(f)  That the Bank (i) has been granted a collateral assignment of Borrower's interest in the Lease, and (ii) shall have the right to assign the Lease to a new lessee subject to the undersigned's consent, not to be unreasonably withheld; and

(g)  That, as of the date hereof, to the best knowledge of the undersigned, the Borrower is in compliance with all of its obligations to the undersigned.

This agreement shall be binding upon and inure to the benefit of the undersigned and the Bank and their respective heirs, estates, personal representative, successors and assigns. It may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be a single instrument.

Executed and delivered on March 2, 2016        **Landlord:** _____

By:_____
Michael Dezer

Title:_____
Manager MDG Powerline, LLC

## CARL G. SANTANGELO, LLC
3300 North Federal Highway, Suite 200
Fort Lauderdale, Florida 33306
Ph. (954) 561-3040
Fax (954) 568-9597
e-mail – csantangelolaw@aol.com

December 16, 2015

David H. Reimer, Esq.

Re:  MDG Powerline Holdings, LLC, Landlord/Seven Stars on the Hudson Corp., Tenant

Dear David:

Enclosed please find original guaranty agreements signed by Jens Berding and Eddy Manzo-Berding in connection with the lease between the captioned parties.

Very Truly Yours,

Carl G. Santangelo

**EXHIBIT D**

**LEASE GUARANTY**

This Guaranty is made as of this _11_ day of _December_ 2015 by Jens Berding (hereafter "Guarantor") with an address of _2108 N 63 2 St Ft LAUD 33308_, to and in favor of Dezer Powerline, LLC and MDG Powerline Holdings, LLC ("Landlord") with an address of 18001 Collins Ave, 31ˢᵗ Floor, Sunny Isles Beach, FL 33160.

WITNESSETH:

WHEREAS, by Lease Agreement dated _November 23_ 2015. Landlord has leased to Seven Stars on the Hudson Corporation ("Tenant") certain premises, as hereafter modified, amended, extended or renewed, (collectively, the "Lease"); and

WHEREAS, Landlord has required the Guarantor to execute this Guaranty of Lease ("Guaranty") as a condition to the Landlord entering into the Lease with the Tenant; and

WHEREAS, Guarantor will receive direct or indirect benefit from the Landlord entering into the Lease with the Tenant.

NOW, THEREFORE, in order to induce Landlord to enter into the Lease and for other good and valuable consideration, the undersigned Guarantor hereby agrees as follows:

1. Guarantor hereby absolutely, unconditionally, and irrevocably guarantees to Landlord the full and prompt payment of all rent and any and all other sums and charges payable by Tenant under the Lease (collectively, the "Payment Obligations") and hereby further guarantees the full and timely performance and observance of all of the covenants, terms conditions and agreements therein provided to be performed and observed by Tenant (the "Performance Obligations" and together with the Payment Obligations collectively, the "Obligations"). In the event of a default under the Lease, Guarantor hereby covenants and agrees with Landlord: (i) to make the due and full punctual payment of all Payment Obligations payable by Tenant under the Lease; (ii) to effect prompt and complete performance of all and each of the Performance Obligations, contained in the Lease on the part of Tenant to be kept, observed and performed; and (iii) to indemnify and save harmless Landlord from any loss, costs or damages arising out of any failure by Tenant to pay or perform any Obligation including, without limitation, attorneys' fees and costs of collection. This Guaranty is a continuing guaranty of payment and performance and is not conditional or contingent upon any attempt to collect from Tenant or upon any other condition or contingency. Notwithstanding the foregoing, the total Obligation pursuant to this Guaranty shall be in effect for all covenants, terms, conditions and agreements contained in the Lease up to one year following a Default. The foregoing limitation shall be in effect so long as Tenant returns the Premises to the Landlord and surrenders possession of the Premises in the condition required by the Lease, free of all tenancies or rights or claims of occupancy by Tenant or any party claiming through Tenant ("Release Date"). Otherwise, the total Obligation pursuant to this Guaranty shall continue until the Release Date.

2. In the event of a default under the Lease, Guarantor waives any right to require Landlord to first (i) proceed against Tenant or pursue any rights or remedies with respect to the Lease; (ii) proceed against or exhaust any security that Landlord holds from Tenant; or (iii) pursue any other remedy whatsoever. Landlord shall have the right to enforce this Guaranty regardless of the acceptance of additional security from Tenant and regardless of the release or discharge of Tenant or any guarantor by Landlord or by others, or by operation of law.

3.  Guarantor hereby expressly waives: (a) any right of setoff, counterclaim or deduction against amounts due under this Guaranty; (b) notice of the acceptance of this Guaranty and notice of default of Tenant under the Lease; and (c) the right to interpose all substantive and procedural defenses of the law of guaranty, indemnification and suretyship, except the defenses of prior payment or prior performance.

4.  Without limiting the generality of the foregoing, the liability of Guarantor under this Guaranty shall not be deemed to have been waived, released, discharged, impaired or affected by (a) reason of any waiver or failure to enforce or delay in enforcing any of the Obligations, or (b) the granting of any indulgence or extension of time to Tenant, or (c) the assignment of the Lease, or the subletting of the premises by Tenant, with or without Landlord's consent, or (d) the expiration of the term, or (e) if Tenant holds over beyond the term of the Lease, or (f) any merger or reorganization or the release or discharge of Tenant or any other guarantor in any voluntary or involuntary receivership, bankruptcy winding-up or other creditors' proceedings, or (g) the rejection, disaffirmance or disclaimer of the Lease by any party in any action or proceeding, or (h) the release of any collateral held for the Obligations or any other guarantor, or (i) any defect or invalidity of the Lease or (j) the transfer by Guarantor of any or all of the capital stock of Tenant, and shall continue with respect to the periods prior thereto and thereafter. The liability of the Guarantor shall not be affected by any repossession, re-entry or re-letting of the premises by Landlord, provided, however, that the net payments received by Landlord after deducting all costs and expenses of repossession and/or reletting the same (including, without limitation, any attorney fees, brokerage fees and any reasonable costs or expenses incurred in redecorating, remodeling, or altering the premises for reletting), shall be credited from time to time by Landlord to the account of Tenant and Guarantor and Guarantor shall pay any balance owing to Landlord from time to time, immediately upon being given written notice of demand by Landlord in the manner for providing notice set forth in the Lease.

5.  The liability of Guarantor under this Guaranty shall not be released by any modification or amendment to the Lease (including any extension or renewal of the term of the Lease), and in the case of any such modification, the liability of Guarantor shall be modified in accordance with the term of any such modification of the Lease. Guarantor waives any notice of the modification or amendment of the Lease.

6.  Guarantor shall pay Landlord's reasonable attorneys' fees and all costs and other expenses incurred in any collection or attempted collection of this Guaranty or in any negotiations relative to the Obligations guaranteed under this Guaranty whether or not a lawsuit is commenced. All rights and remedies of Landlord under this Guaranty shall be cumulative and may be exercised singly or concurrently.

7.  This Guaranty shall remain in full force and effect until the payment or performance of all Obligations and the other amounts payable under this Guaranty (whether or not the Lease shall have been terminated). Until the payment and performance of all Obligations and the amounts payable under this Guaranty, Guarantor:

a.  Shall have no right of subrogation against Tenant by reason of any payments or acts of performance by the Guarantor in compliance with the obligations of the Guarantor under this Guaranty;

b.  Waives any right to enforce any remedy which Guarantor now or hereafter shall have against Tenant by reason of any one or more payments or acts of performance in compliance with the obligations of Guarantor under this Guaranty; and

c.  Subordinates any liability or indebtedness of Tenant now or hereafter held by Guarantor to the obligations of Tenant to the Landlord under the Lease.

8.  This instrument may not be changed, modified, discharged or terminated orally or in any manner other than by an agreement in writing signed by Guarantor and the Landlord.

9.  All of the terms, agreements and conditions of this Guaranty shall extend to and be binding upon Guarantor, and the heirs, executors, personal administrators, and/or successors and assigns of Guarantor and shall inure to