**UNITED STATED BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

SEVEN STARS ON THE HUDSON CORP.

                   Debtor,

_____/

Case No.: 19-17544-SMG

Chapter 11

## REPLY IN SUPPORT OF OBJECTION OF MDG TO DEBTOR'S MOTION TO ASSUME UNEXPIRED LEASE OF NONRESIDENTIAL PROPERTY

MDG Powerline Holdings, LLC ("Landlord"), by and through undersigned counsel, submits this Reply in support of its Objection to Debtor's Motion to Assume Unexpired Lease of Nonresidential Property [ECF No. 164] (the "Objection") and in opposition to Debtor's Response in Further Support of its Motion [ECF No. 168] (the "Response").

## PRELIMINARY STATEMENT

At the outset, it is important to frame the context by which the Motion [ECF No. 129] (the "Motion to Assume") comes before the Court. Debtor is seeking to assume the pre-petition lease it entered into with Landlord on or about November 23, 2015 (the "Lease"). The Bankruptcy Code protects landlords by requiring certain conditions be met when a debtor seeks to assume an unexpired, non-residential lease. Debtor seeks to rewrite those conditions because it cannot meet them. For the reasons set forth in the Objection, as stated on the record at the initial hearing on April 29, 2020 and for the additional reasons set forth below, the Motion to Assume must be denied.

Under the Lease, Debtor agreed to operate a trampoline park and family fun center in the Premises under the trade name "Rockin' Jump." Debtor is in default of its obligation under section 6.01 of Lease to use the Premises "for the purposes and *under the trade name(s) specified*

in the Basic Lease Provisions, and for no other purposes and under no other trade name whatsoever . . . " (emphasis added).  The "Basic Lease Provisions" require that the Premises be operated as a "Rockin' Jump" trampoline center.  <u>See</u> Lease, section 6.01.  Further, the Lease expressly states that "Landlord has entered into this Lease with Tenant in order to obtain for the benefit of the entire Property the unique attraction of [Debtor's] *trade name* as specified in the Basic Lease Provisions . . ."  <u>See</u> Lease, section 10.01(a) (emphasis added).  Debtor cannot cure this default, and contrary to Debtor's assertions in the Response, section 365 of the Bankruptcy Code bars the assumption of the Lease under such circumstances.

Debtor also is in monetary default of its rental obligations under the Lease.  Debtor argues that either the force majeure clause of the Lease or an equitable doctrine excuses its non-payment of rent.  In fact, the opposite is true.  First, under the Bankruptcy Code, a debtor must either cure all defaults at the time of assumption or provide adequate assurance that all defaults will be promptly cured.  <u>See</u> 11 U.S.C. § 365(b)(1)(A).  Second, as explained below, applicable non-bankruptcy law does not excuse performance by Debtor.  No equitable doctrine applies to change that fact.

Accordingly, Landlord respectfully requests that this Court deny the Motion to Assume and order the rejection of the Lease.

<u>**ARGUMENT**</u>

Debtor makes two separate arguments in its Response as to why the Objection should be denied and the Motion to Assume granted.  First, it argues that 365(b)(1) does not require "literal compliance" with the Lease and, therefore, its failure to operate as "Rockin' Jump" franchise does not prevent assumption of the Lease.  Second, Debtor argues that there is no monetary default under the Lease because (a) an alleged force majeure event excuses the rent obligation,

and (b) enforcement of the rental obligation during the alleged force majeure event should be "rejected" on equitable grounds. Respectfully, neither argument posited by Debtor survives scrutiny.

**I.**    **Debtor is in Default of its Franchise Obligation under the Lease and is Barred from Assuming the Lease**

Debtor concedes that it is in default of its obligation to operate the Premises as a "Rockin' Jump" trampoline park under section 6.01 of the Lease. See Response, p. 4. For the reasons explained in the Objection, Debtor is barred from assuming the Lease under section 365 of the Bankruptcy Code due to that default. In the Response, however, Debtor has attempted to argue that its failure to operate as a "Rockin' Jump" is a default that may be excused in connection with the assumption of the Lease. Debtor is wrong.

When a "[d]ebtor brings [a] Motion to assume the Lease pursuant to 11 U.S.C. § 365, [d]ebtor has the burden of proving that the lease is one subject to assumption and that all requirements for assumption have been met." In re 8800 LLC, No. 2:18-BK-17263-RK, 2019 WL 268577, at *18 (Bankr. C.D. Cal. Jan. 18, 2019) (citation and quotation marks omitted). Assumption of the Lease requires curing of all defaults (including monetary defaults) at the time of such assumption. See In re Embers 86th Street, Inc., 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995) ("[c]uring requires payment of all rental arrearages and other money obligations *at the time the lease is assumed*") (emphasis added); see also In re R.H. Neil, Inc., 58 B.R. 969, 971 (Bankr. S.D.N.Y. 1986) ("Adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so."); In re Eagle Creek Subdivision, LLC, 397 B.R. 758, 765 (Bankr. E.D.N.C. 2008) (Section "365(b)(1) precludes the debtor from assuming the contracts at issue because it committed a non-monetary and material default that it cannot cure.").

Where a lease obligates a debtor to operate leased premises under a particular franchise, the debtor must be able to operate the premises under such franchise and assume the applicable franchise agreement in order to assume such lease under section 365.  See e.g., In re Szenda, 406 B.R. 574, 582 (Bankr. D. Mass. 2009) (finding that the debtor's motion to assume a lease agreement must be denied unless the debtor seeks approval for the assumption of a franchise agreement relating to the leased premises); In re Ok Kwi Lynn Candles, Inc., 75 B.R. 97, 101 (Bankr. N.D. Ohio 1987) (holding that because the debtor was in default of its obligations under a franchise agreement and had failed to cure or offer adequate assurance that it could cure this default, the debtor could not assume the lease pursuant to 11 U.S.C. § 365(b)(1)); In Matter of Gretter Autoland, Inc., No. 14-02831-ALS11, 2015 WL 4915802, at *4 (Bankr. S.D. Iowa Aug. 17, 2015) (denying debtor's motion to assume and assign the lease where debtor failed to obtain approval of the assumption of the franchise agreements).  See generally, In re Memphis-Friday's Assocs., 88 B.R. 830, 842 (Bankr. W.D. Tenn. 1988) (denying Debtor's motion to assume where, inter alia, "sufficient evidence exist[ed] of the Debtor's defaults in the franchise agreement and of the Debtor's lack of proof on curing those defaults [and] the reality is that adequate assurance of future performance of the franchise cannot be offered by this Debtor.").

In In re FPSDA I, LLC, 450 B.R. 392 (Bankr.E.D.N.Y.2011), the debtor's leases only permitted the debtor to operate the leased premises as a "Baskin-Robbins" or "Dunkin' Donuts," pursuant to applicable franchise agreements.  450 B.R. at 395.  The court recognized that the objecting creditor "would not have signed a lease with [the] debtor had that debtor not simultaneously signed a franchise agreement with the [franchisor] to operate a Dunkin' Donuts and/or Baskin-Robbins franchise on the leased premises."  Id. at 395.  The FPSDA I court therefore held that unless the debtor assumed the applicable franchise agreements and operated

the leased premises as a "Baskin-Robbins" or "Dunkin' Donuts" as required under its leases, it would be unable to assume such leases under section 365.  Id. at 398.

Here, just as the objecting creditor in FPSDA I, Landlord would not have entered into the Lease but for Debtor's obligation to operate the Premises as a "Rockin' Jump" pursuant to a "Rockin' Jump" franchise agreement.  See Lease, sections 6.01 and 10.01.  Debtor has already expressly rejected the "Rockin' Jump" franchise agreement and plainly cannot operate the Premises as a "Rockin' Jump" as required under the Lease.  Accordingly, Debtor may not assume the Lease under section 365.

The arguments Debtor makes in the Response do not compel a different result.

First, Debtor argues that failure to operate as a "Rockin' Jump" is permissible because it need not be in "literal compliance" with the Lease in order to assume it.  Debtor cites a Third Circuit decision for the proposition that Debtor need not be in "literal compliance with all lease provisions" to demonstrate adequate assurance of future performance.  Response, p. 4 (citing In re Joshua Slocum Ltd., 922 F.2d 1081 (3d Cir. 1990)).   But, the Third Circuit's holding is not nearly as broad as Debtor suggests.  In fact, the court held that only "*insubstantial* disruptions in, inter alia, tenant mix, and *insubstantial* breaches in other leases or agreements" are typically allowed by courts.  Id. at 1090 (emphasis added).  There can be no dispute that the failure to operate as a "Rockin' Jump" trampoline center is not "insubstantial."  Section 6.01 of the Lease requires that Debtor operate as a "Rockin' Jump" franchise and for no other purposes and under no other trade name whatsoever.  See Lease, section 6.01.  Moreover, the Lease expressly states that "Landlord has entered into this Lease with Tenant in order to obtain for the benefit of the entire Property the unique attraction of [Debtor's] *trade name* as specified in the Basic Lease Provisions . . ."  See Lease, section 10.01(a) (emphasis added).  Just as in Joshua Slocum, the

requirement to operate as a "Rockin' Jump" was "intended to benefit both the landlord and the tenant [and] was negotiated at arms length to accommodate the commercial expectations of the parties." Joshua Slocum, 922 F.2d at 1092. In addition, rather than seeking to *assign* the Lease like the debtor in Joshua Slocum, in this instance Debtor is seeking to *assume* the Lease for its own benefit.

Second, Debtor argues that courts may take a "less stringent" view of adequate assurance of future performance in non-shopping center cases. Response, p 4. However, here, too, the cases relied upon by Debtor fail to support its argument. Debtor cites Rockland Center Assocs. V. TSW Stores of Nanuet, Inc. (In re TSW Stores of Nanuet, Inc.), 34 B.R. 299, 307 (Bankr. S.D.N.Y. 1983), but the court in that case limited permitted deviations in performance to those that "would not violate the express terms of the lease" in the context of the *assignment* of the lease to a third party. Id. at 306. Again, in this instance, Debtor is seeking to *assume* the Lease, but in doing so, rewrite a significant, material, bargained-for provision that requires it to operate as a "Rockin' Jump." As stated above, Debtor concedes that it is in default of the express term of the Lease obligating Debtor to operate the Premises as a "Rockin' Jump" and there is no basis under the Bankruptcy Code for Debtor to say "it changed its mind" about agreeing to operate as a "Rockin' Jump." And, as explained in Joshua Slocum, "even if the [property] were not a shopping center, the bankruptcy court's authority to excise [a term] of the lease is questionable." 922 F.2d at 1091.

Similarly, Debtor's reliance upon In re Vista VI, Inc., 35 B.R. 564 (N.D. OH 1983) to support its argument that the Court can ignore the language of 365(b)(1) is misplaced. In that case, the court conducted a careful "balancing [of] the equities" which ultimately weighed in the debtor's favor only because the debtor "ha[d] a real possibility of meeting its obligations to its

creditors," and "no real harm to [the objecting creditor]" was expected.  Id. at 567-68.  Those facts simply do not exist here.  As explained below, Debtor is in default in payment of two months' rent under the Lease and has provided no indication, let alone, assurance, that it has the capability of making such payments.  Moreover, Debtor's inability to operate the Premises as a "Rockin' Jump" represents a clear harm to Landlord's ability to realize the benefit of its bargain under the Lease.

Third, Debtor stretches its argument to suggest that requirements in the Lease are more important outside of bankruptcy than inside of bankruptcy when seeking to assume the Lease.  See Response, p. 5.  Neither of the cases relied upon by Debtor support its argument.  In In re Martin Paint Stores, the court's decision to excuse the debtor from its obligation to comply with a use provision under its lease and allow such debtor to assume and *assign* such lease was predicated on the fact that the debtor would then be able to cure its lease defaults and the objecting creditor would have no further pecuniary injuries.  See In re Martin Paint Stores, 199 B.R. 258, 263 (Bankr. S.D.N.Y. 1996).  Again, here, Debtor is not even remotely hinting that it will cure the monetary defaults that have occurred post-petition.  Once again, this is not a situation where Debtor is seeking to *assign* the Lease, but rather assume it for its own benefit.

In In re Tobago Bay Trading, the court held that a use clause in a lease which prohibited liquidation sales by the debtor related to the "insolvency or financial condition" of the debtor and was not to be enforced.  See In re Tobago Bay Trading Co., 112 B.R. 463, 467 (Bankr. N.D. Georgia 1990).  This case has no applicability to Debtor's situation and addressed whether a shopping center tenant could be permitted to hold a liquidation sale notwithstanding a provision restricting such sales in its underlying lease.

Fourth, Debtor contends that Landlord's actions (and inaction) with respect to the "Rockin' Jump" franchise shows that the provision under the Lease obligating Debtor to operate the Premises as a "Rockin' Jump" lacks materiality.  Response, p. 6.  However, Debtor fails to cite any caselaw to support its argument that the actions or (inaction) of Landlord should weigh on the analysis of the materiality of such provision.  A provision in a lease is material if "it goes to the very essence of the contract, *i.e.*, the bargained for exchange."  Joshua Slocum, 922 F.2d at 1092.  The Lease is unequivocal that Debtor use the Premises "solely" under the "Rockin' Jump" trade name and that Landlord entered the Lease "in order to obtain for the benefit of the entire Property the unique attraction of [the Rockin' Jump] trade name . . ."  See Lease, sections 6.01 and 10.01.  Further, such provision is of paramount importance to Debtor's ability to perform its financial covenants under the Lease.  Debtor's conceded breach of such material provision of the Lease is a material default which precludes assumption of the Lease under section 365.

## II.    Neither the Force Majeure Clause Nor an Equitable Doctrine Excuses Debtor's Monetary Default of its Rental Obligations Under the Lease

The Lease's force majeure clause does not excuse Debtor's rental obligation.  Rather, the force majeure clause specifies: "*This section shall not excuse any rental obligations*, nor delay the Rental Commencement Date for any time period in excess of thirty (30) days."  Lease, section 20.14(b) (emphasis added).

In an attempt to evade the clear language of the Lease, Debtor now asks this Court to discharge its clear duty to pay rent on the grounds of "temporary commercial impracticality or impossibility" or unconscionability.  Neither doctrine applies.

### i.    *Commercial Impracticability or Impossibility*

Commercial impracticability or impossibility "is a defense to nonperformance and refers to situations where the purpose for which the contract was made has become impossible to

perform." Spring Lake NC, LLC v. Figueroa, 104 So.3d 1211, 1216 (Fla. 2d DCA 2012).

Florida courts have long held that "simple inability to pay does not create an impossibility or

impracticality which excuses a party's performance of his contractual allegations." LSREF2

Baron, LLC v. Beemer & Assocs. XVII, L.C., No. 3:10-CV-577-J-32JBT, 2011 WL 6838163, at

*4 (M.D. Fla. Dec. 29, 2011) (holding that the "defense of commercial impracticability does not

apply" because "an economic downturn, even one as drastic and severe as the recent recession, is

not the type of unanticipated circumstance that would relieve sophisticated business entities from

their contractual obligations."); see also, Ferguson v. Ferguson, 54 So.3d 553, 556 (Fla. 3d DCA

2011) ("Economic downturns and other market shifts do not truly constitute unanticipated

circumstances in a market-based economy.").

     In Lantino v. Clay LLC, No. 1:18-CV-12247 (SDA), 2020 WL 2239957, at *3 (S.D.N.Y.

May 8, 2020), the Southern District of New York rejected Defendants' argument that payment of

a judgment was excused on impossibility grounds as a result of COVID-19.  The court noted that

under New York law (just as is the case in Florida), "where impossibility or difficulty of

performance is occasioned only by financial difficulty or economic hardship, even to the extent

of insolvency or bankruptcy, performance of a contract is not excused." Id.  The court further

found that it was "undisputed that Defendants [were] in default under the [Agreement]

 because they "failed to make a payment when due." Id.  The court held: "At best, Defendants

have established financial difficulties arising out of the COVID-19 pandemic and the PAUSE

Executive Order that adversely affected their ability to make the payments called for under the

Settlement Agreement.  As such, Defendants' performance under the Settlement Agreement is

not excused." Id.

The same is true here.  It is undisputed that Debtor is in monetary default under the Lease for failing to pay rent.  While Debtor may have financial difficulties arising out of the COVID-19 pandemic and executive order, economic hardship does not excuse its rental obligations under the Lease.  See id.

ii.      *Unconscionability*

Debtor's unconscionability claim fares no better.  Under Florida law, for a court to find a contract unconscionable, "evidence must be adduced to demonstrate that the contractual provision 'is both procedurally and substantively unconscionable.'"  In re TOUSA, Inc., 503 B.R. 499, 507 (Bankr. S.D. Fla. 2014) (citing Gainesville Health Care Ctr., Inc. v. Weston, 857 So.2d 278, 284 (Fla. 1st DCA 2003)).  "The procedural component of unconscionability concerns the manner in which the contract was entered.  It involves consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms." Id. (citing Orkin Exterminating Co. v. Petsch, 872 So.2d 259, 265 (Fla. 2nd DCA 2004)). Substantive unconscionability requires a determination that the terms are so "outrageously unfair" as to shock the "judicial conscience."  Id. (citing Weston, 857 So.2d at 285).

In  In re TOUSA, Inc. the court rejected the debtor's claim that a term was unconscionable, stating that, "[w]hile [Debtor] is understandably unhappy that its equitable relief options are limited, [Debtor] voluntarily agreed to the [contractual] Provision.  No provision of Florida law operates to limit the parties' contractual agreement."  503 B.R. at 507.

Such is the case here, as well.  Debtor, a sophisticated commercial party, voluntarily agreed to carve out its rental obligations from the force majeure clause.  Indeed, as evidence of the parties' equal bargaining power, Debtor averred: "[Debtor] declares that [Debtor] has read and understands all parts of this Lease. In the construction and interpretation of the terms of this

Lease, the principle that a document is to be construed most strictly against the party who prepared the same shall not be applied, it being agreed that both parties hereto have participated in the preparation of the final form of this Lease."  Lease, section 20.24.  Debtor cannot now reasonable contend that the carve-out provision is procedurally unconscionable.

Nor is the Lease substantively unconscionable.  An unconscionable contract is defined by Florida courts as one that "no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other."  Belcher v. Kier, 558 So. 2d 1039, 1044 (Fla. 2d DCA 1990).  The carve-out of rental obligations from a force majeure clause is a commonplace lease provision that does not shock the "judicial conscience."  See generally Weston, 857 So.2d at 285.

Here, Landlord and Debtor contracted to exclude payment of rent from the force majeure clause.  "It is not the function of the courts to 'rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.'"  Marriott Corp. v. Dasta Const. Co., 26 F.3d 1057, 1068 (11th Cir. 1994) (citing and quoting Steiner v. Physicians Protective Trust Fund, 388 So.2d 1064, 1066 (Fla. 3d DCA 1980)).  Because the force majeure clause specifically carves out rental obligations, Debtor is in default of the Lease and its Motion must be denied.

Even setting aside the clear carve-out language of the force majeure clause, Debtor's monetary defaults under the Lease are still not covered by the force majeure clause.

A "claim of force majeure is equivalent to an affirmative defense and the party relying on a force majeure clause bears the burden of proof."  In re Flying Cow Ranch HC, LLC, No. 18-12681-BKC-MAM, 2018 WL 7500475, at *2 (Bankr. S.D. Fla. June 22, 2018).  "Force majeure

clauses are typically narrowly construed, and will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified." ARHC NVWELFL01, LLC v. Chatsworth at Wellington Green, LLC, No. 18-80712, 2019 WL 4694146, at *3 (S.D. Fla. Feb. 5, 2019) (citations omitted).  Florida courts generally interpret force majeure clauses with catch-all language to capture only unlisted events that are similar to the listed events.  See, e.g., Snavely Siesta Assocs., LLC v. Senker, 34 So. 3d 813, 817–18 (Fla. 2d DCA 2010) (finding that force majeure provision was "tether[ed] to a [specific] phrase" which provided "a nonexhaustive list of possible examples" and the party's nonperformance did not fall within that list); Cartan Tours, Inc. v. ESA Services, Inc. 833 So. 2d 873, 875 (Fla. 4th DCA 2003) (refusing to enforce a force majeure clause because the phrase "affecting the ability of the Olympic Games to be held" in the clause was ambiguous as it related to September 11, 2001 terrorist attacks); Home Devco/Tivoli Isles LLC v. Silver, 26 So. 3d 718, 723 (Fla. 4th DCA 2010) (finding that cause of default was not similar to the specific language in force majeure clause and therefore, did not excuse nonperformance).

Here, the Lease's force majeure clause provides that if Debtor "is delayed in performing any obligation" by "any cause beyond the reasonable control of the party required to perform such obligation, the time period for performing such obligation shall be extended by a period of time equal to the period of the delay."  Lease, section 20.14(a).  The clause specifically defines a cause as "beyond the reasonable control of a party" when "such cause would affect any person similarly situated (such as a power outage, labor strike or truckers' strike)."  Id.  But the Lease explicitly *excludes* from the force majeure clause causes that are not "beyond the reasonable control of such party when peculiar to such party (such as *financial inability* or ordering materials requiring a long lead time)."  Lease, section 20.14(a) (emphasis added).

Here, Debtor's financial inability to pay rent arises because of its own financial instability, which—as is detailed in Landlord's Objection—began well before the pandemic started.  A solvent commercial tenant would have the ability to avoid default during the pandemic, rendering this cause as peculiar to Debtor, and therefore explicitly excluded from the force majeure clause.

Because Debtor cannot prove that the force majeure clause applies to its failure to perform under the Lease, this claim should be denied.

<u>**CONCLUSION**</u>

For the reasons stated above and set forth in Landlord's Objection [ECF No. 164], Landlord respectfully requests that this Court deny Debtor's Motion and order the rejection of the Lease.

Dated: May 15, 2020

Respectfully submitted,

BILZIN SUMBERG BAENA
PRICE & AXELROD LLP
*Counsel for MDG Powerline Holdings, LLC*
1450 Brickell Avenue, 23rd Floor
Miami, Florida 33131
(305) 374-7580

By:____/s/ *Jay M. Sakalo*_____
        Jay M. Sakalo
        Fla. Bar No. 156310

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF Notice of Electronic Filing to all Parties appearing in this case who are registered to receive electronic noticing in this case via CM/ECF on this 15th day of May, 2020.

By:____/s/ *Jay M. Sakalo*_____
      Jay M. Sakalo